MICHIGAN ALLIED DAIRY ASS'N v. STATE BOARD OF TAX ADMINISTRATION.

1. TAXATION—SALES—USE—PROCESSING.

The term "processing," as used in the general sales tax and use tax acts, connotes the preparation of raw material for the market (Act No. 167, § 1 [b], Pub. Acts 1933, as last amended by Act No. 313, Pub. Acts 1939; Act No. 94, § 4 [g], Pub. Acts 1937).

2. FOOD—MILK—PASTEURIZATION—REFRIGERATION.

Pasteurization of milk followed by prolonged refrigeration manufactures no new article but frees the milk from bacteria and keeps it free thereof until it reaches the consumer.

3. Taxation — Food — Protection from Contamination — Sales—
   Milk Bottles and Cans—Industrial Processing.

   Since milk is not marketable unless protected against contamina-
   tion or deterioration before as well as after pasteurization and
   such protection is afforded by the use of cans and bottles,
   such use constitutes a part of the industrial processing of
   milk, hence the sale of cans and bottles to processors for such
   use is not taxable under the general sales tax and use tax acts
   (Act No. 167, § 1 [b], Pub. Acts 1933, as last amended by
   Act No. 313, Pub. Acts 1939; Act No. 94, § 4 [g], Pub. Acts
   1937).

4. Same—Milk Bottles and Cans—Industrial Processing—Other
   Uses.

   The fact that bottles and cans have one use in industrial process-
   ing of milk makes them exempt from general sales tax and
   use tax acts notwithstanding the fact that they are also put to
   another use not in industrial processing (Act No. 167, § 1 [b],
   Pub. Acts 1933, as last amended by Act No. 313, Pub. Acts
   1939; Act No. 94, § 4 [g], Pub. Acts 1937).

5. Same—Construction of Statutes—Exemptions—Industrial
   Processing.

   The scope of tax laws may not be extended by implication or
   a forced construction, hence where an article has more than
   one use and one or more uses are exempt from the general
   sales tax or use tax acts and no apportionment of tax for the
   various uses has been provided by the legislature, the article
   will be exempted from such taxes (Act No. 167, § 1 [b], Pub.
   Acts 1933, as last amended by Act No. 313, Pub. Acts 1939;
   Act No. 94, § 4 [g], Pub. Acts 1937).

6. Same—Statutes—Officers—Authority.

   Tax exactions, property or excise, must rest upon legislative
   enactment, and collecting officers may act only within express
   authority conferred by law.

7. Same—Dubious Language Not Resolved Against Taxpayer.

   The language of tax laws may be made plain, and if it is
   dubious it is not resolved against the taxpayer.

8. Same—Administrative Construction of Tax Law.

   Fact that board administering a tax law first construed term
   "industrial processing," as used in general sales tax act, as
   not covering milk bottles and cans used in protecting raw and
   pasteurized milk from contamination, later as covering them,
   and still later as not covering such articles showed doubt en-

tertained on the subject (Act No. 167, § 1 [b], Pub. Acts 1933, as last amended by Act No. 313, Pub. Acts 1939; Act No. 94, § 4 [g], Pub. Acts 1937).

9. COSTS—PUBLIC QUESTION—CONSTRUCTION OF TAX ACTS.

No costs are allowed in proceeding for declaration of rights under general sales tax and use tax acts, a public question being involved (Act No. 167, § 1 [b], Pub. Acts 1933, as last amended by Act No. 313, Pub. Acts 1939; Act No. 94, § 4 [g], Pub. Acts 1937).

Appeal from Wayne; Murphy (George B.), J. Submitted June 2, 1942. (Docket No. 10, Calendar No. 41,735.) Decided September 8, 1942.

Bill by Michigan Allied Dairy Association, a Michigan corporation, against Vernon J. Brown, Auditor General of the State of Michigan, and others constituting the State Board of Tax Administration, for a declaration of its rights in relation to the general sales tax and use tax. From decree rendered, defendants appeal. Affirmed.

*Sidney E. Doyle,* for plaintiff.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *T. Carl Holbrook* and *Daniel J. O'Hara,* Assistants Attorney General, for defendants.

BUTZEL, J. Plaintiff asks for a declaratory judgment to obtain a judicial interpretation of the term ''industrial processing'' as used in the general sales tax act, Act No. 167, § 1 (b), Pub. Acts 1933, as last amended by Act No. 313, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 3663-1, Stat. Ann. 1940 Cum. Supp. § 7.521), and in the use tax act, Act No. 94, § 4 (g), Pub. Acts 1937 (Comp. Laws Supp. 1940, § 3663-44, Stat. Ann. 1941 Cum. Supp. § 7.555

[4]), when applied to milk bottles and cans sold to creameries and dairies and by them used as milk containers and loaned to customers.

Section 1 of the general sales tax act, *supra*, provides:

"(b)  The term 'sale at retail' means any transaction by which is transferred for consideration the ownership of tangible personal property, when such transfer is made in the ordinary course of the transferor's business and is made to the transferee for consumption or use other than for consumption or use in industrial processing or agricultural producing, or for any other purpose than for resale in the form of tangible personal property."

Section 4 of the use tax act, *supra*, provides that it shall not apply to

"(g)  Property sold to a buyer for consumption or use in industrial processing or agricultural producing."

The question may be resolved into whether milk bottles and cans purchased by milk processors are used in industrial processing, or whether they are only convenient containers in which to deliver the contents. The State board of tax administration first held that the cans and bottles were not used in industrial processing but on November 23, 1936, entered an order as follows:

"That milk bottles are used in the industrial processing of milk and therefore such bottles are exempt from the sales tax. Milk bottles are considered as used in industrial processing, inasmuch as they have to be filled at a higher temperature than State requirements in order to avoid foaming, and after this filling the industrial processing is continued in the refrigeration room."

On March 1, 1940, however, the board reversed its decision and ruled that, inasmuch as containers are used for the purpose of delivering tangible personal property to the consumers and are to be returned to the seller, they are taxable. They further ruled that milk cans used on the farm itself to keep milk in a cool place before it is picked up by the creameries were not consumed or used for agricultural producing, and were not exempt from the general sales and use taxes. The dairies' bottles and cans are not sold, but are repeatedly loaned to consumers and then returned. We principally confine our discussion to whether milk bottles and cans are used by dairies and creameries for such industrial processing as is exempted by the general sales and use tax acts. After raw milk reaches the dairy or creamery plant and after it has been tested for butter fat content, inspected for flavor and condition, sampled for chemical content, weighed and emptied into special receiving equipment, it is then treated or handled in two steps. First: It is heated to just over 142° Fahrenheit and kept at that temperature for at least 30 minutes. It is then promptly cooled to 50° F. or lower, and as a rule to 40° F., the latter being the lowest temperature at which it can be poured into bottles without foaming. Second: The milk is then poured into bottles or cans emerging from a sterilization chamber at about 80° F., the heat of the bottles causing the temperature of the milk to rise by about 8° F. The bottles are capped, the milk cooled in the bottles to just over 32° F. (freezing), then held at that temperature for the period (as a rule longer than 12 hours) prior to being loaded on wagons for delivery to consumers. By the first step about 99 per cent. of the pathogenic bacteria are killed immediately; by the second step the re-

maining 1 per cent. is rendered inactive and slowly killed.

By retaining the capped bottles of milk and cans in a refrigeration room for at least 12 hours, and then delivering them in a cooled condition to the consumers, the milk is kept fresh and free from germs. During the prolonged period of refrigeration in the bottles and cans, the cream line forms and deepens so that the public can see the amount of cream in the bottles. This is one of the conditions of marketability of bottled milk. If the 1 per cent. of germ life not destroyed by the heating process in the first step were left at normal temperature, the bacteria would multiply very rapidly and cause the milk to sour. Only refrigeration for a long period before being put on delivery wagons enables the milk to remain free from bacteria and from souring during the interval between the time the milk leaves the refrigeration room of the creamery until it is placed in the consumer's ice box. These facts were brought out by the opinions of five expert witnesses for plaintiff but were in part contradicted by the opinion of one expert for the defendant. We are impressed with the opinions of plaintiff's witnesses, not their number. Defendant's witness testified that the refrigeration does not constitute industrial processing.

The Supreme Court of Arizona, in construing the word "processing" in the Arizona privilege sales tax act, stated:

"It will be seen that the essential portion of the definition is to 'prepare raw material    *    *    *    for the market.'" *Moore* v. *Farmers Mutual Manfg. & Ginning Co.,* 51 Ariz. 378, 382 (77 Pac. [2d] 209).

Milk is not marketable until rendered suitable for purchase and consumption from the point of view

of the consumer, for only milk which, after pasteurization, has been "cooled and protected against subsequent contamination or deterioration may be used with confidence that it has been rendered safe as regards pathogenic bacteria." *Lang's Creamery, Inc.*, v. *City of Niagara Falls*, 251 N. Y. 343, 344 (167 N. E. 464).

The attorney general calls attention to *City of Louisville* v. *Ewing Von-Allmen Dairy Co.*, 268 Ky. 652 (105 S. W. [2d] 801), *City of Richmond* v. *Richmond Dairy Co.*, 156 Va. 63 (157 S. E. 728), and *Anheuser-Busch Brewing Association* v. *United States*, 207 U. S. 556 (28 Sup. Ct. 204, 52 L. Ed. 336), which hold that pasteurization does not constitute a manufacturing process. These cases do not distinguish between manufacturing processing and industrial processing. Pasteurization followed by prolonged refrigeration manufactures no new article, but frees the milk from bacteria and keeps it free thereof until it reaches the consumer. To accomplish this it is necessary to put the milk in bottles immediately after it has been subjected to heating. The peculiarities of milk are such that, if it were immediately cooled to just above freezing before being poured into the bottles, foam would form so that the bottles would not be full. While it might be suggested that the milk might be stored in refrigerated vats and put into cool sterilized bottles and cans just before leaving the creamery and thus possibly avoid the growth of bacteria, nevertheless, this would be a less practicable way of handling milk. In any event, we are only considering the accepted practice as disclosed by the record. We hold that the use of bottles and cans is part of the industrial processing of milk.

The question is raised whether the exemption should apply inasmuch as the milk bottles and cans

are also used as delivery containers, the latter use not being industrial processing. Without considering the practical disadvantages of using one set of bottles and cans for refrigeration and another for delivery, we believe that the one use of bottles and cans in industrial processing makes them exempt from the general sales and use taxes, notwithstanding the fact that they are also put to another use not in industrial processing.

Where an article has more than one use, one or more (but not all) of which are within the agricultural producing or industrial processing exemptions, the legislature could have provided that the portion of the value of the article representing its nonexempt uses should bear the tax, but it has not done so. We have repeatedly held that the scope of the tax laws may not be extended by implication or a forced construction. We held in *Re Dodge Brothers,* 241 Mich. 665, 669, as follows:

"Tax exactions, property or excise, must rest upon legislative enactment, and collecting officers can only act within express authority conferred by law. Tax collectors must be able to point to such express authority so that it may be read when it is questioned in court. The scope of tax laws may not be extended by implication or forced construction. Such laws may be made plain, and the language thereof, if dubious, is not resolved against the taxpayer."

We have since adhered to this principle in *J. B. Simpson, Inc.,* v. *O'Hara,* 277 Mich. 55, 61, and *Star Steel Supply Co.* v. *State of Michigan,* 290 Mich. 378, 383, and adhere to it again in the case at bar. The milk bottles and cans in question are used in industrial processing. The very fact that the State board of tax administration for years construed the law as exempting milk bottles and cans when

used in industrial processing shows the doubt it entertained on the subject. If the legislature intended to include them, it could have said so in no uncertain terms.

Milk from the cows is poured into cans on the farm. These cans are kept in a cool place and are used to preserve the milk in a proper condition until they are picked up by the creamery trucks. This cooling operation is generally required by city ordinances. Were the milk not preserved in cans in a cool place, it might spoil before it could be pasteurized.

We hold that the circuit judge was correct in his decision in holding that the milk cans used on farms and milk bottles and cans used by dairies in the manner disclosed by the record come within the agricultural producing and industrial processing exemptions, respectively, of the general sales tax act and the use tax act. The decree of the circuit court to that effect is affirmed. The question being a public one, no costs will be allowed.

CHANDLER, C. J., and NORTH, STARR, and BUSHNELL, JJ., concurred with BUTZEL, J. SHARPE, J., concurred in the result. BOYLES and WIEST, JJ., did not sit.