MICHIGAN-WISCONSIN PIPE LINE COMPANY, appellee, v. RAY E. JOHNSON et al., members, and IOWA STATE TAX COMMISSION, appellants.

No. 48817.

(Reported in 73 N.W.2d 820)

DECEMBER 13, 1955.

REHEARING DENIED FEBRUARY 10, 1956.

Dayton Countryman, Attorney General, Edward R. Hayes, Special Assistant Attorney General, and James Barrett, of the Iowa State Tax Commission staff, for appellants.

H. R. Duncan and Jens Grothe, both of Des Moines, for appellee.

WENNERSTRUM, J.—This appeal involves the interpretation which should be given to section 423.4(2), 1950 (1954) Code. This section exempts from use-tax assessment tangible personal property used in interstate transportation or interstate commerce. The Iowa State Tax Commission, after audit of the plaintiff's records, and hearing thereon, entered a use-tax assessment against the plaintiff-company for the materials used in the erection of certain structures and installations. Section 423.16, 1950 (1954) Code. The Michigan-Wisconsin Pipe Line Company appealed to the Polk County District Court. Sections 422.55, 422.29, 1950 (1954) Code. Upon trial the court held the assessments were improper and void and set them aside. The tax commission has appealed.

The plaintiff-company operates a pipe-line system transporting natural gas from points in Texas through several states, including Iowa, to Michigan, Wisconsin and other points. The transportation of gas is effected by means of the forcing of it through pipe lines buried in the ground. Compressor stations are located at various points on the line and aid in forcing the

gas in its movement. The line of the plaintiff-company enters the State of Iowa near Lineville on the south and continues through the south and eastern part of the state. Through measuring stations, and separate utility companies, it serves the communities of Mount Pleasant, Burlington, Fort Madison, Keokuk, Centerville and Fairfield. It is shown by the record only $2\%_{10}\%$ of the gas brought into Iowa by the plaintiff-company is delivered to all the various communities heretofore noted.

The construction of the pipe line was completed in 1949 and went into operation on a partial capacity basis in October of that year. Thereafter during 1950 and 1951, after the line was already in operation, two compressor stations were erected in this state. One was built near Lineville and the other near Fairfield. The cost of the material used in the installation of the two compressor stations and auxiliary buildings at the points mentioned is the basis of the assessment here involved.

The installations and buildings at the two compressor stations consisted of: Water Storage Tank; Cooling Tower; Water Well; Scrubbers; Compressor Building; Pipe-line Warehouse; Pipe-line Garage; Pipe-line Storage Racks; Microwave Tower; Microwave Building; Meter Building; Auxiliary Building; Air Receivers; Lubrication Oil Storage Tanks; Shop and Warehouse and Garage; and Scrap Bin.

In addition to the buildings mentioned at each station a house for a superintendent was constructed. At the Lineville location, in addition to the superintendent's home, eight other homes were built, which are rented to employees. These employees work on two 12-hour shifts. By reason of the distance from Lineville, the nature of the roads required to be used, and the limited housing conditions in or near that community, the houses were erected for use by the employees. The Fairfield station is not too far distant from that city, is on a good road and employee housing there was not deemed necessary.

The plaintiff-company, or a contractor engaged by it to develop the compressor stations, as well as the auxiliary buildings previously mentioned, purchased various articles of tangible personal property outside of Iowa for use in the building and development of the project. This material became a part of the

buildings, grounds and equipment at the stations. The company or its contractor did not pay use or sales tax to the Iowa State Tax Commission on the items necessary for the construction (with a few exceptions). Thereafter the commission, following the audit previously referred to, assessed a use tax against the company, it having acquired said property subject to the claimed lien for use tax owed by its contractors. Section 423.14, 1950 (1954) Code.

The company appealed to the Polk County District Court from the commission's order of assessment on the ground the property purchased was exempt from the use tax because: (1) the provisions of section 423.4(2) exempted purchases of property used in interstate commerce or interstate transportation(2) it was exempt from tax under prior construction of section 423.4(2) and the rules and regulations of the State Tax Commission (3) the assessment and tax was an interference with interstate commerce and in violation of the Federal Constitution, and (4) the assessment and tax violated the due process clause in the 14th Amendment to the Federal Constitution.

The statutory exemption, to which reference has been made, is as follows:

"The use in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this chapter: * * *

"2. Tangible personal property used (a) in interstate transportation or interstate commerce, * * *." Section 423.4, 1950 (1954) Code.

I. There are several issues discussed in the respective briefs. However, it would appear the tax commission's primary claim for reversal in this court and its claimed authority to make the assessment it did is based on the following contention. It maintains the State of Iowa has power to impose a use tax on the use of tangible personal property brought into and delivered in Iowa, and which has come to rest in Iowa, even though that property may at some future time be used in interstate commerce.

The commission asserts as authority for its position heretofore set forth the case of Southern Pacific Co. v. Gallagher, 306

U. S. 167, 172, 176, 178, 59 S. Ct. 389, 391, 393, 395, 83 L. Ed. 586, wherein the Supreme Court of the United States passed upon a provision of the California Use Tax Act of 1935. It would appear from the cited case the California statute imposed a use tax on a consumer of tangible personalty held for "use" or "storage." It is therein stated: "The tax is not sought from personal property used in transactions entirely disassociated from any agency connected with interstate transportation * * * but from tangible personalty purchased out of the state for immediate or subsequent installation in an interstate railway facility." It is further stated: "In the present case some of the articles were ordered out of the state under specification suitable only for utilization in the transportation facilities and installed immediately on arrival at the California destination. If articles so handled are deemed to have reached the end of their interstate transit upon 'use or storage,' no further inquiry is necessary as to the rest of the articles which are subjected to a retention, by comparison, farther removed from interstate commerce. We think there was a *taxable moment* when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use—retention and exercise of a right of ownership, respectively—was effective. The interstate movement was complete. The interstate consumption had not begun." (Emphasis supplied.)

And as indicative of the reasoning of the Supreme Court of the United States in the cited case it was therein stated: "A tax on property or upon a taxable event in the state, apart from operation, does not interfere. This is a practical adjustment of the right of the state to revenue from the instrumentalities of. commerce and the obligation of the state to leave the regulation of interstate and foreign commerce to the Congress."

A case which is cited in the Southern Pacific Co. v. Gallagher, supra, opinion and which is a further claimed authority by the tax commission as a basis for the assessment it has made in the instant case is that of Henneford v. Silas Mason Co., 300 U. S. 577, 581 to 583, 57 S. Ct. 524, 526, 527, 81 L. Ed. 814. In this last cited case an assessment of a use tax was made upon

contractors who were engaged in the construction of the Grand Coulee Dam on the Columbia River. The taxing authority of the State of Washington imposed a use tax on machinery, materials and supplies, including locomotives, cars, conveyors, pumps and trestle steel which were bought at retail in other states. In commenting upon the claimed interstate commerce character of the transaction the Supreme Court of the United States stated:

"On the other hand, a use tax is always payable where the user has acquired property by retail purchase in or from another state, unless he has paid a sales or use tax elsewhere before bringing it to Washington. The tax presupposes everywhere a retail purchase by the user before the time of use. If he has manufactured the chattel for himself, or has received it from the manufacturer as a legacy or gift, he is exempt from the use tax, whether title was acquired in Washington or elsewhere. The practical effect of a system thus conditioned is readily perceived. * * *

"The tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end.

"Things acquired or transported in interstate commerce may be subjected to a property tax, nondiscriminatory in its operation, when they have become part of the common mass of property within the state of destination. [Citing cases] This is so, indeed, though they are still in the original packages. [Citing cases] For like reasons they may be subjected, when once they are at rest, to a nondiscriminatory tax upon use or enjoyment. [Citing cases] The privilege of use is only one attribute, among many, of the bundle of privileges that make up property or ownership. * * *

"The tax upon the use after the property is at rest is not so measured or conditioned as to hamper the transactions of interstate commerce or discriminate against them.

"Equality is the theme that runs through all the sections of the statute. There shall be a tax upon the use, but subject to an offset if another use or sales tax has been paid for the same thing."

And in the case of General Trading Co. v. State Tax Commission of Iowa, 322 U. S. 335, 338, 64 S. Ct. 1028, 1029, 88 L. Ed.

1309, the Supreme Court of the United States in commenting upon the use tax as it might affect interstate commerce stated: "* * * the mere fact that property is used for interstate commerce or has come into an owner's possession as a result of interstate commerce does not diminish the protection which he may draw from a State to the upkeep of which he may be asked to bear his fair share."

In the last cited case it affirmed this court in the case of State Tax Commission v. General Trading Co., 233 Iowa 877, 10 N.W.2d 659, 153 A. L. R. 602. In the cited Iowa case this court stated at page 885 of 233 Iowa, page 663 of 10 N.W.2d: "The tax is not on the transaction or sale but is on the use of the article after it is acquired for use in Iowa through a sale in interstate commerce."

■ From a review of the foregoing authorities we have reached the conclusion, and hold, the personal property brought into Iowa by the plaintiff or its contractors was subject to the Iowa use tax. The property so brought in, prior to its actual installation in and as a part of the transportation system of the pipe-line company, had not then become a part of the interstate transportation system. It should be kept in mind the tax was for the use of the property in Iowa and not upon a business of an interstate nature. Consequently there can be no basis for holding the assessment made and levied was a tax on interstate commerce as prohibited by the Federal Constitution.

II. We are concerned in the instant case with the circumstances and conditions when property becomes a part of interstate commerce and thereby not subject to a state tax.

In Carter v. Carter Coal Co., 298 U. S. 238, 303, 56 S. Ct. 855, 869, 80 L. Ed. 1160, the Supreme Court of the United States in commenting upon the term "commerce" as applied to "interstate commerce" made this comment: "We have seen that the word 'commerce' is the equivalent of the phrase 'intercourse for the purposes of trade.' Plainly, the incidents leading up to and culminating in the mining of coal do not constitute such intercourse."

The cases noted in this division have passed on the question and are further authority for the holding the use tax imposed is not a tax on interstate commerce.

And in the case of Schechter Poultry Corp. v. United States, 295 U. S. 495, 546, 55 S. Ct. 837, 850, 79 L. Ed. 1570, 97 A. L. R. 947, the Supreme Court of the United States said: "In determining how far the federal government may go in controlling intrastate transactions upon the ground that they 'affect' interstate commerce, there is a necessary and well-established distinction between direct and indirect effects. The precise line can be drawn only as individual cases arise, but the distinction is clear in principle. Direct effects are illustrated by the railroad cases we have cited, as e. g., the effect of failure to use prescribed safety appliances on railroads which are the highways of both interstate and intrastate commerce, injury to an employee engaged in interstate transportation by the negligence of an employee engaged in an intrastate movement, the fixing of rates for intrastate transportation which unjustly discriminate against interstate commerce. But where the effect of intrastate transactions upon interstate commerce is merely indirect, such transactions remain within the domain of state power. If the commerce clause were construed to reach all enterprises and transactions which could be said to have an indirect effect upon interstate commerce, the federal authority would embrace practically all the activities of the people and the authority of the State over its domestic concerns would exist only by sufferance of the federal government. Indeed, on such a theory, even the development of the State's commercial facilities would be subject to federal control."

Although the case of Harding v. Oklahoma Tax Commission, Okla., 275 P.2d 264, 267, does not consider the question of a use tax on property brought into the state for subsequent use in connection with interstate commerce yet a statement found in that case seems here applicable. In commenting upon the Oklahoma statute it is stated: "We are of the opinion that it was the intention of the legislature, as expressed in the Act under consideration, that the purchase of tangible personal property outside this state be subject to payment of the use tax if such property would have been subject to the sales tax had it been purchased within the state." In the cited case a contractor had entered into several contracts wherein he had agreed to furnish

labor and material for a lump sum. In carrying out these contracts he purchased material and supplies from outside Oklahoma and had them brought into that state by common carrier and thereafter used them in carrying out the provision of his contracts.

And in the instant case there was somewhat the same situation. The material was for the improvements made at the two points in Iowa, which were in the main carried out by a contractor. Although the pipe-line company may have paid for some of the material used by the contractor, yet the material was used in Iowa and if all of the same had been purchased in Iowa would undoubtedly have been subject to a sales tax.

The case of Oklahoma Tax Comm. v. Stanolind Pipe Line Co., 10 Cir., 113 F.2d 853, 854, 855, is very much in point to the case now before this court. This is evidenced by a portion of the statement of facts incorporated in the opinion:

"Stanolind Pipe Line Company, a corporation organized under laws of Maine, hereinafter called the company, owned, maintained, and operated a pipe line and pipe-line system extending from Texas northward through Oklahoma and other states into Indiana. It received deliveries of oil from connections in Oklahoma for transportation to and delivery at points in other states. Its business in connection with its pipe-line operations was exclusively interstate. During the time in question, the articles of tangible personal property consisting of pipe, machinery, repair parts and other articles for the maintenance and upkeep of its pipe-line system were purchased outside the State of Oklahoma and imported into that state to fulfill specific orders for the repair and maintenance of its interstate pipe-line system there, and such articles were installed as quickly as possible after their arrival in the state.

"The Oklahoma Tax Commission audited the books of the company, determined that a tax was due for the period from May, 1937, to and including March, 1939, and demanded its payment. The tax was paid under protest, and this suit was filed for its recovery."

In the cited opinion reference is made to the case of Southern Pacific Co. v. Gallagher, supra, 306 U. S. 167, 59 S. Ct. 389, 83

L. Ed. 586, and also the case of Pacific Telephone & Telegraph Co. v. Gallagher, 306 U. S. 182, 59 S. Ct. 396, 83 L. Ed. 595. After commenting upon the last two cited cases the opinion in the Stanolind case states: "Likewise in this case there was a taxable moment after the personal property imported into the state reached the end of its movement in interstate commerce and before the beginning of its use or consumption in the interstate pipe-line system of the company, and during that moment the company exercised the rights of retention and installation. That was enough in respect to separateness and apartness of such property from interstate commerce to warrant the state in the exercise of the taxing power to lay an excise upon its use within the state. The tax did not constitute such a direct and immediate burden upon interstate commerce as to offend the commerce clause."

And it was further stated in the Stanolind case as follows: "The retention and exercise of the right of installation of the property in question after the termination of its movement in interstate commerce and before the beginning of its use and consumption in the interstate business of the company came well within the statute and the regulation promulgated under it."

Certiorari to the Supreme Court of the United States concerning the last cited case was denied in Stanolind Pipe Line Co. v. Oklahoma Tax Comm., 311 U. S. 693, 61 S. Ct. 75, 85 L. Ed. 448.

A further case which bears somewhat on the question before us is Natural Gas Pipe Line Co. v. State Commission of Revenue and Taxation, 1947, 163 Kan. 458, 467, 183 P.2d 234, 241, wherein it was held that property brought into the state by an interstate pipe line for the purpose of incorporating it into its transportation system by use of repairs, maintenance, construction or extension thereto as an incident and requirement for the operation of the line was not brought into the state for "consumption in interstate commerce" within the provisions of the Kansas Compensation Tax Act. This Act exempted any use, storage or consumption of any article of tangible personal property by a railroad or public utility for consumption or movement in interstate commerce.

The plaintiff has particularly called to our attention the case of Arkansas-Louisiana Pipe Line Co. v. Coverdale, D. C., La., 20 F. Supp. 676, 680. In this case a tax was endeavored to be collected from a pipe-line company upon the horsepower of the compressor engines used in propelling the gas from one state to the other. In the cited case the court held the company was entitled to use its compressor stations as a part of its interstate business, free from improper state interference. It was therein stated: "Should it be held that an excise tax may be validly laid upon the production of power used in such transportation, then the door is open to such abuse. We are compelled to say that the tax in this case is a direct burden upon the interstate commerce of the plaintiff, and hence the section of the statute in question is contrary to the commerce clause of the Federal Constitution, in so far as it applies to plaintiff's business." However, see Coverdale v. Arkansas-Louisiana Pipe Line Co., 303 U. S. 604, 58 S. Ct. 736, 82 L. Ed. 1043, which reversed the lower court previously cited.

We do not believe the federal district court case and other cases of a similar nature are controlling. In the Louisiana case there was an effort made to tax the power used in transporting gas for interstate purposes. This is not the nature of the tax which the Iowa Tax Commission seeks to impose.

We have also given consideration to the case of Interstate Oil Pipe Line Co. v. Stone, 203 Miss. 715, 725, 35 So.2d 73, 76. See also 36 So.2d 142. The statute there under consideration pertained to an exemption of property used in the " 'furtherance of interstate transportation or interstate commerce'." We do not believe it is controlling in the case here before us. There is no discussion of the Supreme Court of the United States cases relative to "use" taxes. We likewise do not believe the case of Scandrett v. Nord, 70 S. D. 527, 528, 19 N.W.2d 344, is controlling. The exemption there under consideration pertained to property, "used or to be used in operating or maintaining interstate transportation or interstate commerce."

It is our holding the case of Southern Pacific Co. v. Gallagher, supra, as well as the other cases cited, are controlling and we are justified in our conclusion the tax commission properly levied the use-tax assessment.

594

III. In the plaintiff's brief we are extensively advised concerning prior rulings of the tax commission and the attorney general of this state pertaining to the question now before us. By these rulings a tax, as levied in the present case, had not been sought to be collected in situations somewhat similar to the instant one. However, this fact is not necessarily controlling.

 The statement in Louisville & N. R. Co. v. United States, 282 U. S. 740, 759, 51 S. Ct. 297, 304, 75 L. Ed. 672, is here applicable: "Long-continued practice and the approval of administrative authorities may be persuasive in the interpretation of doubtful provisions of a statute, but cannot alter provisions that are clear and explicit when related to the facts disclosed. A failure to enforce the law does not change it. The good faith of the carriers in the transactions of the past may be unquestioned, but that does not justify the continuance of the practice."

And in Peoples Gas & Elec. Co. v. State Tax Comm., 238 Iowa 1369, 1376, 28 N.W.2d 799, 804, we commented upon the administrative practices and rules of the tax commission, as follows: "Although stability in such rules and regulations is desirable, it does not follow that they may not be changed or corrected by the Commission. Where Commissions are required to administer laws in new fields, such changes are not unusual. See Boyer-Campbell Co. v. Fry, 271 Mich. 282, 260 N.W. 165, 98 A. L. R. 827."

In City of Ames v. State Tax Comm., 246 Iowa 1016, 1022, 71 N.W.2d 15, 19, we said: "The function of the commission is an administrative one, and it may enact reasonable rules and regulations necessary in carrying out the legislative enactments. But it may not make law, or by rule change the legal meaning of the common law or the statutes." See also Waterman v. Burbank, 196 Iowa 793, 195 N.W. 191.

 It is true, although not controlling, courts give weight to the construction of statutes of doubtful meaning by administrative officials charged with their operation and enforcement. Yarn v. City of Des Moines, 243 Iowa 991, 996, 54 N.W.2d 439, and cases cited. However, courts should not necessarily follow such rulings when on thorough study it is found the prior interpretations and rulings are not sound. Consequently it is our

holding we are not bound by the fact that the commission for a number of years held, unquestionably in good faith, the use tax was not assessable where property brought in from without the state later became a part of interstate facilities.

IV. One of the issues involved in this appeal relates to prior rules 177.1 and 177.2 of the Iowa State Tax Commission. It would appear that on December 29, 1950, the tax commission adopted a new and complete set of rules and regulations in which were included these rules. The effect of rule 177.1 was to exclude from the definition of "use" any tax on property held for storage and installation. Rule 177.2 pertained to property used in pipe lines and becoming a part of such a system. On June 27, 1952, the commission issued an order rescinding rules 177.1 and 177.2. The trial court held the tax commission had not legally rescinded the two rules, in that section 17A.2, 1954 Code (chapter 51, 54th G. A., 1951) had not been followed. This particular legislation pertains to the procedure of administrative agencies in making rules and their necessary approval by the attorney general of this state before becoming effective. It is true the rescinding of the rules in question did not have the approval of the attorney general. It is maintained, however, their rescission was approved by the assistant attorney general assigned to the tax commission. Regardless whether they were properly rescinded or not we hold this fact is not controlling in this case and should not be determinative of the appeal now before us. Our concern is whether a proper assessment was made. We have held that it was and we shall not go into a discussion whether a prior rule was properly rescinded. Administrative rules seek to implement the statutes but it is for the court to finally interpret them. Morrison-Knudsen Co. v. State Tax Comm., 242 Iowa 33, 44 N.W.2d 449, 41 A. L. R.2d 523.

■ V. It was the contention of the plaintiff in the district court the imposition of the tax by the tax commission was unconstitutional in that it was a tax on interstate commerce and consequently violative of the federal commerce clause. As heretofore noted in Oklahoma Tax Comm. v. Stanolind Pipe Line Co., supra, a tax similar to the one here in controversy was held not to "offend the commerce clause." Other constitutional questions raised are not argued and we shall not comment thereon.

596

VI. We have necessarily limited our comments on the claim for exemption to the one raised in this case.

By reason of our holdings herein the cause is reversed and remanded for proceedings in the district court in keeping with this opinion.—Reversed and remanded.

All JUSTICES concur.