BRUCE MOTOR FREIGHT, INC., appellee, v. MARTIN LAUTERBACH et al., appellants.

BRUCE MOTOR FREIGHT, INC., appellee, v. RAY E. JOHNSON et al., appellants (two cases).

BRUCE TRANSFER & STORAGE COMPANY, appellee, v. RAY E. JOHNSON et al., appellants (two cases).

No. 48880.

(Reported in 77 N.W.2d 613)

958

JUNE 19, 1956.

Dayton Countryman, Attorney General, M. A. Iverson, Special Assistant Attorney General, and James M. Barrett, Special Counsel for Iowa State Tax Commission, of Des Moines, for appellants.

Bradshaw, Fowler, Proctor & Fairgrave, Howard Steele and John Synhorst, all of Des Moines, for appellees.

PETERSON, J.—The question involved is the interpretation of section 423.4(2), Code 1954, and whether or not plaintiffs are liable for use tax on motor vehicles and trailers used in interstate transportation.

By agreement of counsel and order of the district judge five cases were consolidated for trial, and by order of this court they have been consolidated on appeal.

The actions are in the nature of mandamus actions to require the State Tax Commission to refund use tax paid under protest to Polk County Treasurer or to Tax Commission. Plaintiff in three cases is Bruce Motor Freight, Inc., a Missouri corporation engaged in interstate transportation. The company holds interstate authority to engage in regular operations between Minneapolis, St. Paul and Des Moines, and Des Moines, St. Louis and Kansas City. It also holds a certificate from Iowa Commerce Commission for intrastate operations between Des Moines and Perry and Des Moines and Centerville and intermediate points. Plaintiff in the other two cases is Bruce Transfer & Storage Company, an Iowa corporation, engaged in the business of moving household goods. It has intrastate authority in Iowa, but has no interstate authority. It is a member, under lease and carrier contract, and stock ownership, of an interstate organization with nationwide interstate authority, known as Allied Van Lines, Inc., an Illinois corporation. There are 88 motor vehicles and trailers involved in the five actions. Fifty-four are owned and operated by Bruce Motor Freight, Inc.; 10

are owned by Bruce Transfer & Storage Company and are under contract or lease to Allied Van Lines, Inc.; 24 are owned by Jobbers Supply Company, of Des Moines, and are leased to Bruce Motor Freight, Inc.; all are used in interstate transportation. The district court decided in favor of plaintiffs and ordered repayment of taxes paid, under writs of mandamus. Defendants appeal.

I. Chapter 423, Code 1954, covers the subject of use tax. It was adopted as chapter 198 of the Forty-seventh General Assembly and became effective April 16, 1937. It is supplementary to the retail sales tax. It covers personal property not purchased in the state, but purchased for use in the state.

The provisions of the use-tax law, which are under consideration in this case, are a part of section 423.4, providing as follows:

"Exemptions. The use in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this chapter: * * *

"2. Tangible personal property used (a) in interstate transportation or interstate commerce * * *."

In 1940 an opinion was issued by the attorney general stating that motor vehicles and trailers used in interstate transportation were exempt from use tax.

At that time a number of rules were adopted by the State Tax Commission to cover motor vehicles used in interstate transportation. Under the rules it was provided that when an application for license was made at the county treasurer's office an affidavit could be filed showing that the motor vehicle was going to be used in interstate transportation. On the basis of the affidavit the treasurer was instructed to waive the use tax. These rules remained in force until June 27, 1952, when the Tax Commission adopted an order rescinding them, effective June 30, 1952. Thereafter when application was made to the county treasurer for motor vehicle license, even if used in interstate transportation, the county treasurer was instructed to collect use tax if purchased outside the State.

The rules outlined above are now canceled, but their use for many years is evidence of a policy of the Commission, and of its interpretation of the intention of the legislature. During these

years, while the legislature has amended other sections of chapter 423 it has never amended or changed section 423.4(2). The legislature was in session in 1953, but it did not adopt any changes in this section to establish or re-enforce the rule changes adopted by the Commission in 1952.

The State Tax Commission audited the books of both plaintiffs from August 1948 to September 1950. During this period the exemption rules of the board were in force, and no use tax was paid on any of the vehicles. This had reference to 53 vehicles of Bruce Motor and 7 vehicles of Bruce Transfer. The other 28 vehicles were either purchased or leased after June 30, 1952.

■ II. It is necessary and proper for administrative departments of our state government, such as the Tax Commission, to adopt rules of procedure as to the matters coming under the jurisdiction of the commissions. Section 422.61, made applicable to Code chapter 423 by section 423.23, grants specific powers to the Tax Commission to adopt rules and regulations, as follows:

"1. The commission shall have the power and authority to prescribe all rules and regulations not inconsistent with the provisions of this chapter, necessary and advisable for its detailed administration and to effectuate its purposes."

Rules cannot be adopted that are at variance with statutory provisions or that amend or nullify legislative intent. Kistner v. Iowa State Board of Assessment and Review, 225 Iowa 404, 280 N.W. 587; Morrison-Knudsen Co. v. State Tax Commission, 242 Iowa 33, 44 N.W.2d 449, 41 A. L. R.2d 523; City of Ames v. State Tax Commission, 246 Iowa 1016, 71 N.W.2d 15; Michigan-Wisconsin Pipe Line Co. v. Johnson, 247 Iowa 583, 73 N.W.2d 820.

In Kistner v. Iowa State Board of Assessment and Review, supra, we said at page 415 of 225 Iowa, page 593 of 280 N.W.: "The Board does not have the right to legislate, and it is conceded * * * that it has no authority under the statute to adopt rules which are in the nature of laws. It cannot make a retailer out of someone who is not under the act a retailer."

In Morrison-Knudsen Co. v. State Tax Commission, supra, we stated at page 42 of 242 Iowa, page 454 of 44 N.W.2d: "It

[Commission] has authority to prescribe only such rules and regulations as are not inconsistent with the provisions of statute."

In City of Ames v. State Tax Commission, supra, the court said at page 1022 of 246 Iowa, page 19 of 71 N.W.2d: "It will be noted that the rule-making power of the commission may not be 'inconsistent with the provisions of this chapter.' The function of the commission is an administrative one, and it may enact reasonable rules and regulations necessary in carrying out the legislative enactments. But it may not make law, or by rule change the legal meaning of the common law or the statutes."

The matter was again considered by this court in Michigan-Wisconsin Pipe Line Co. v. Johnson, supra, in which it is stated at page 595 of 247 Iowa: "Administrative rules seek to implement the statutes but it is for the court to finally interpret them."

III. Counsel for appellants allege five reasons as a basis for their contention that the exemption is not applicable:

1. Small percentage of intrastate use.

2. Ownership by Bruce Transfer & Storage Company, an Iowa corporation, of ten of the motor vehicles, and contractual relationship for their use by Allied Van Lines, Inc.

3. Lease of 24 motor vehicles by Jobbers Supply Company, an Iowa company, to Bruce Motor Freight, Inc.

4. Some of the motor vehicles were delivered by the manufacturer at Des Moines, and licensed in Polk County, and safety equipment was added to prepare for interstate use.

5. In addition to the above claims, appellants contend that on the basis of some or all of these conditions there was a "taxable moment" at which time the motor vehicles and trailers became subject to use tax in Iowa, before entering into interstate transportation.

The statute exempts tangible personal property used in interstate transportation or interstate commerce. The property involved in these actions comes under the provision as to "interstate transportation." There is a difference between the two terms. The words "interstate commerce" are broader than the transportation provision. State v. Western Transportation Co., 241 Iowa 896, 43 N.W.2d 739. Commerce includes interstate telephone projects, interstate telegraph services, interstate pipe

lines transporting gas or oil, and other interstate commercial projects. Transportation covers passengers and personal property. Since these cases involve only motor vehicles and trailers we will use herein the phrase "interstate transportation."

IV. In connection with the question of intrastate use, it appears in the evidence, without conflict, that 95% of the tonnage of the motor vehicles and trailers used by Bruce Motor Freight, Inc. was interstate transportation.

 It has been held by this court in several cases, and in numerous decisions in other states, that the exemption is effective, even though the use is not exclusively interstate transportation or commerce. Dain Mfg. Co. v. Iowa State Tax Commission, 237 Iowa 531, 22 N.W.2d 786; City of Ames v. State Tax Commission, supra; Michigan Allied Dairy Assn. v. State Board of Tax Admn., 302 Mich. 643, 5 N.W.2d 516; Republic Pictures Corp. v. Kappler, 8 Cir., Iowa, 151 F.2d 543, 162 A. L. R. 228; State v. Western Transportation Co., supra.

In Dain Mfg. Co. v. Iowa State Tax Commission, supra, the question in the case was the exemption of personal property used in producing or preparing property intended for retail sale. This appears in section 423.1(1) of the present Code. The article involved in the case was "generally" used in production of such goods. The decision holds that this is sufficient under the statute. The court states at page 538 of 237 Iowa: "An article may be *directly*, without being *entirely*, used for a given purpose." (Italics are quoted.)

In City of Ames v. State Tax Commission, supra, the question involved was as to the exemption of certain equipment purchased outside the state of Iowa and used by City of Ames in construction of a municipal light and power plant. One of the items involved was a switchgear. In connection with its use the court stated at page 1031 of 246 Iowa, page 24 of 71 N.W.2d:

"If any substantial part of the function of the switchgear is either manufacturing or servicing electricity, the use tax does not apply.

"We find in 30 A. L. R.2d 1439, in the annotation on page 1446, this language: 'It appears that machines or materials may

be "used" in manufacturing or processing so as to be free from use tax although they are not exclusively so used.' "

In Michigan Allied Dairy Assn. v. State Board, supra, the Michigan Supreme Court held that cans and bottles used in dairying were properly excluded from the tax, although a considerable part of their function was merely to serve as containers for distribution to customers. But since they were also used in cooling the milk, they were held to be a part of the "industrial processing" of the milk. The court used the following significant language, which pertains not only to exempt use, but to the question of legislative intent (page 650 of 302 Mich., page 518 of 5 N.W.2d):

"Where an article has more than one use, one or more (but not all) of which are within the agricultural producing or industrial processing exemptions, the legislature could have provided that the portion of the value of the article representing its non-exempt uses should bear the tax, but it has not done so. We have repeatedly held that the scope of the tax laws may not be extended by implication or a forced construction."

In Republic Pictures Corp. v. Kappler, supra, one of the questions at issue was whether or not films, after being shipped to Des Moines, and distributed to other parts of Iowa, lost their identity as personal property in interstate commerce. There was some intrastate movement of the films. The case was not a use-tax case, but had reference to labor standards, yet the question of intrastate or interstate commerce was involved. The small passage of the film in intrastate commerce was held not to destroy their interstate commerce identity.

V. Appellants contend that because Bruce Transfer & Storage Company, an Iowa corporation, was the owner of ten motor vehicles and trailers they were subject to use tax. These were vehicles under lease or contract to Allied Van Lines, Inc. The combination of the lease and carrier contract constitutes a joint enterprise arrangement, with the title held and tax payable by one member of the enterprise, and use by the other member in interstate transportation throughout the nation. Five of the vehicles were not operated by Allied Van out of Des Moines.

They were stationed and operated from Salt Lake City. Seven of them had been purchased by Bruce Transfer in 1948 and 1949 and were assessed for use tax by reason of the audit made by the Commission. Allied Van Lines, Inc. is a nonprofit co-operative corporation organized under the laws of Illinois with principal place of business in Chicago. It operates through what is known as its agents, such as Bruce Transfer & Storage Company. There are approximately 550 agents in the United States. Each agent is the holder and owner of one share of common stock in the co-operative. The agency companies or corporations own and maintain the equipment and furnish the drivers. Ninety-two per cent of the gross receipts are allocated to the agents and eight per cent to Allied Van for maintenance of the centralized nationwide interstate transportation operation. The fact of ownership by Bruce Transfer & Storage Company would not establish tax liability. It is a question of the *use* of the vehicles.

The *use* of this property was in interstate transportation, and this is where the emphasis must be placed. The two cases cited by appellant of Dairy Queen of Oklahoma, Inc. v. Tax Commission, 205 Okla. 473, 238 P.2d 800, and State v. Southern Saw Service, 256 Ala. 546, 55 So.2d 828, do not support the position of the Tax Commission. The Oklahoma case pertains to equipment leased under franchise to individuals for serving a type of ice cream, and the court held they were not in manufacturing business, and therefore not entitled to the manufacturing establishment exemption provided by Oklahoma law. In the Alabama case the company leased and serviced blades, cutters and knives to 3000 users in the state. The court held the company was not engaged in processing or manufacturing tangible personal property and did not qualify for the Alabama statutory exemption, established for such purposes.

We approve the definite statement made by the trial court in his findings concerning this matter:

"5. The arrangement between the plaintiff company and Allied Van Lines, Inc., although denominated a lease, amounts to a joint enterprise, in view of the fact that the plaintiff owns the equipment, operates it with its own employees, pays the cost

thereof and receives the greater part of the gross revenue therefrom.

"6. This arrangement between plaintiff and Allied Van Lines, Inc. does not deprive the plaintiff of the right to the exemption granted by statute."

VI. Another claim made by appellants as a basis for assessing use tax against Bruce Motor Freight, Inc. is that they leased 24 semitrailers from Jobbers Supply Company of Des Moines. These were new vehicles purchased by Jobbers Supply in Cincinnati, and under leases previously executed, delivered to Bruce Motor at St. Louis. They entered Iowa in interstate transportation. They were never "at rest" in the State, prior to interstate use. The lease was for six years, and under it the lessee assumed all maintenance, licenses and taxes. Counsel for appellants claim that since the ownership is in Jobbers Supply Company, an Iowa organization, the exemption of the statute does not apply. Since the property involved is "tangible personal property" used in "interstate transportation" it is not controlling as to whether the right of possession is under lease or ownership. We hold the exemption effective in either case when the provisions of the statute as to *use* are present. The intention of the legislature is clear that what they intended to exempt and what they did exempt was the *use* of the property in interstate transportation. Kress v. Department of Revenue, 322 Mich. 590, 592, 34 N.W.2d 501, 502.

We find no Iowa cases directly in point. In Kress v. Department of Revenue, supra, Mr. Kress was the owner of what was known as Jackson Soft Water Service. He furnished his service to homes for domestic use and to service stores, restaurants, hotels and manufacturing plants. The Michigan statute contained an exemption as to " 'property sold to a buyer for consumption or use in industrial processing or agricultural producing.' "

It appeared from the evidence that about ninety per cent of the units were used for domestic purposes, and the court held that such units were not exempt from the license fee provided by the statute. However, ten per cent were used for service stores, restaurants, hotels and manufacturing plants. With ref-

erence to these the court said at page 595 of 322 Mich., page 503 of 34 N.W.2d:

"Apparently there should be a proportionate reduction of the tax in proportion with the number of softeners used in what is, under this opinion, to be treated as industrial processing, as compared to softeners used for the purposes of a domestic consumer. The case should be remanded to the circuit court for a determination as to use of units in industrial processing under the definition contained in this opinion."

The court held that the property was not liable for license fee on units leased to the exempted industrial establishments.

In these cases, although we have a lessor and lessee relationship, the property was used in an exempted class, and was not subject to use tax.

■ VII. Bruce Motor Freight, Inc. maintain a repair shop in Des Moines, in which they employ seventeen mechanics for the purpose of the upkeep and maintenance of their equipment which is being used in interstate transportation. As to some of the vehicles, when they were purchased it was necessary for the company to add extra gas tanks, mud flaps, turn signals, fire extinguishers and other safety equipment in order to comply with motor-vehicle laws in the various states where they operate. Appellants claim this places such vehicles at rest in Iowa before they enter into interstate transportation and therefore makes them subject to use tax. The undisputed evidence is that where this safety equipment is added it is only for the purpose of preparing the vehicles for immediate interstate use. In connection with this claim appellants urge that the licensing of some of the vehicles with the county treasurer was an intrastate "use" in Iowa. They cite no supporting decisions. We hold that none of these contentions constitute such use or nullify the exemption.

■ VIII. Appellants contend that by reason of some or all of the actions or usages of appellees there was a time when the 88 vehicles were in use in Iowa before entering into interstate transportation. They claim this situation is accomplished either through some intrastate use, licensing, being lessee as to some of the vehicles, being lessor as to other vehicles, and placing safety equipment upon some of the vehicles. They contend that

by these acts a "taxable moment" was created in the State of Iowa when the vehicles became subject to use tax before being placed in interstate transportation.

Counsel for appellants contend that our recent decision in Michigan-Wisconsin Pipe Line Co. v. State Tax Commission, supra, is controlling as to these cases. The facts and issues involved in the cases are not similar. In the Michigan-Wisconsin case a large volume of building material and parts was purchased outside of Iowa either by the contractor or the company for the purpose of erecting nine houses, tanks, shop, warehouse and four other buildings. This material had all become a part of "common mass of property within the state of destination." Quoted from Henneford v. Silas Mason Co., 300 U. S. 577, 582, 57 S. Ct. 524, 526, 81 L. Ed. 814. We find no precedent in the Michigan-Wisconsin case as a basis for decision in these cases. The motor vehicles and trailers were all purchased, or leased by or to appellees for use in interstate transportation, and for no other purpose. There was no "taxable moment" as to any of the personal property involved in these cases prior to its being placed in interstate transportation.

The leading case in connection with the theory of "taxable moment" use prior to the property being used in interstate transportation is Southern Pacific Co. v. Gallagher, 306 U. S. 167, 177, 59 S. Ct. 389, 393, 83 L. Ed. 586. This case is based on the exemption statutes of the State of California. The property involved consisted of rails, equipment, machinery, tools and office supplies. The Supreme Court said:

"We think there was a taxable moment when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use—retention and exercise of a right of ownership, respectively—was effective. The interstate movement was complete. The interstate consumption had not begun."

Another leading case is Henneford v. Silas Mason Co., supra. This case involved machinery, material and supplies. The court states at page 582 of 300 U. S., page 526 of 57 S. Ct.:

"The tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end.

"Things acquired or transported in interstate commerce may be subjected to a property tax, nondiscriminatory in its operation, when they have become part of the common mass of property within the state of destination."

There are other decisions supporting this doctrine, but these are sufficient to show that there is a clear and distinct difference between this line of cases and these five cases. There is no situation here comparable to the delivery in the state of personal property such as described in the above cases, and which formed the "taxable moment" use prior to entering interstate transportation.

IX. Appellants' counsel devoted many pages in both its brief and reply brief to the proposition that a State has the power to tax tangible personal property in various forms, although used in interstate transportation and commerce, and that such tax, if equal, is not contrary to the Constitution or laws of the United States. This general principle is correct and has support in many decisions. This is not the question in this case. The question is the interpretation of section 423.4(2) as to exemption of tangible personal property used in Iowa in interstate transportation. The legislature could have imposed some equalized type of tax if it so desired. In fact it does do so as to state gasoline tax. Interstate buses and motor vehicles pay such tax. It did not do so as to personal property used in interstate transportation.

Under this division of appellants' argument they cite several cases in support of their contention. An examination of the cases discloses that there is a clear distinction between them and these cases. Dixie Greyhound Lines, Inc., v. McCarroll, 22 F. Supp. 985, is an Arkansas case referring to the 6½¢ per gallon gasoline tax provided under the laws of the State of Arkansas. Bingaman v. Golden Eagle Western Lines, 297 U. S. 626, 56 S. Ct. 624, 80 L. Ed. 928, is a similar New Mexico case referring to a 5¢ per gallon gasoline tax provided by the statutes of New Mexico. Interstate Busses Corp. v. Blodgett, 276 U. S. 245, 48 S. Ct. 230, 72 L. Ed. 551, is a Connecticut case, involving a 1¢ per mile

excise tax provided under the laws of Connecticut. City of Chicago v. Willett Co., 344 U. S. 574, 73 S. Ct. 460, 97 L. Ed. 559, refers to a tax imposed by a city ordinance of Chicago on trucks. Roadway Express, Inc., v. Murray, 60 F.2d 293, is an Oklahoma case imposing a license fee under the statutes of Oklahoma. In all of these cases, as well as others cited by appellants, the tax involved was based on a specific tax statute adopted by the legislature of the various states. As long as the tax is equal and does not interfere with interstate commerce it has been approved. Such decisions are not of any assistance in these cases because there is not involved herein any specific statute of the State of Iowa providing for a tax. The provisions of the exemption statute are not the basis for sustaining a specific tax. Our legislature did not, in 1937, and has not in later enactments imposed a use tax on motor vehicles used in the state in interstate transportation. It has specifically exempted them from use tax.

In connection with the argument on constitutional questions, counsel for appellants present the proposition that section 423.4(2) "is merely a disclaimer, exempting only that 'use' which the State is prohibited from taxing by the Constitution and laws of the United States." This is a narrow and restricted interpretation which has no merit. The clear intention of the legislature would be destroyed by such a construction. State ex rel. Winterfield v. Hardin County Rural Electric Cooperative, 226 Iowa 896, 907, 285 N.W. 219, 224; City of Ames v. State Tax Commission, supra. In the latter case this court said at page 1029 of 246 Iowa, page 23 of 71 N.W.2d:

"In State ex rel. Winterfield v. Hardin County Rural Electric Cooperative [* * *] supra, the question at issue was whether a cooperative association formed to engage in manufacturing and distributing electrical energy was engaged in one business or two. The relator contended it was two; but this court said: 'To us the position taken by the relator is strained and supertechnical construction run riot.'

"We also approved this language from Lynch v. Alworth-Stephens Co., 8 Cir., Minn., 294 F. 190, 194: 'And the plain, obvious and rational meaning of a statute is always to be pre-

ferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover.'"

X. Counsel for appellants seriously contend in their brief and argument that exemption statutes must be construed strictly against the claimant for exemption. They cite many cases. In the cases at bar there is no conflict in the evidence. Defendants offered no evidence, except as it appeared in the cross-examination and the exhibits. Under these circumstances the result does not depend on degrees of construction, but on the proper interpretation of legislative intent.

In case of City of Ames v. State Tax Commission, supra, we said at page 1026 of 246 Iowa, page 21 of 71 N.W.2d: "A considerable portion of the briefs is devoted to the question of strict or liberal construction of the governing statutes. We shall not discuss this question. As we held in Dain Mfg. Co. v. Iowa State Tax Comm., supra [* * *], the result here does not depend upon a strict or liberal rule of construction. In either case the conclusions would be the same. We have pointed out above that there was no real dispute of fact involved, and the appellee has carried the burden imposed."

We decide as to the five cases, that all 88 motor vehicles and trailers are tangible personal property used in. interstate transportation, and exempt from the use tax, under section 423.4(2) of the Code. The decrees are affirmed, and the writs of mandamus for repayment of the tax and interest should issue accordingly.—Affirmed.

All JUSTICES concur.