MINNAERT *v.* DEPARTMENT OF REVENUE.

1. TAXATION—SALES AND USE TAX EXEMPTIONS—EARTH-MOVING EQUIPMENT USED IN TAILINGS DAM CONSTRUCTION FOR COPPER MINE—INDUSTRIAL PROCESSING.

Plaintiff contractor's equipment, consisting of bulldozers and other large earth-moving machinery used in present and continuous construction of large tailings dams for a copper mining company incident to its required disposal of waste products and substantial re-use of decantate water in industrial processing of copper ingots for the market *held,* exempt from sales and use taxes, where such equipment has been purchased for use on such jobs, not used elsewhere, and entire operation took place on mining company's property but was not attached thereto (CLS 1956, §§ 205.54a, 205.94).

REFERENCES FOR POINTS IN HEADNOTES
[1] 47 Am Jur, Sales and Use Taxes § 16 *et seq.*

2. COSTS—INDUSTRIAL PROCESSING OF COPPER—SALES AND USE TAX
EXEMPTIONS.

. No costs are allowed in suit for declaration of rights by construc-
tion contractor as to exemption under sales and use tax acts
of bulldozers and other large earth-moving equipment purchased
for and used solely in present and future construction of tail-
ings dams used in industrial processing of copper into ingots
for the market (CLS 1956, §§ 205.54a, 205.94).

Appeal from Ontonagon; Wright (Robert R.), J.
Submitted January 9, 1962. (Docket No. 47, Calen-
dar No. 48,920.) Decided March 19, 1962.

Bill for declaration of rights by Clarence P. Min-
naert, doing business as C. P. Minnaert Construction
Company, against Michigan Department of Reve-
nue to establish exemption from sales and use taxes.
Decree for plaintiff. Defendant appeals. Affirmed.

*William F. Pellow,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Joseph B.
Bilitzke,* Solicitor General, *T. Carl Holbrook, Wil-
liam D. Dexter,* and *Maurice Barbour,* Assistant At-
torneys General, for defendant.

BLACK, J. This is a suit for declaratory relief
against the allegedly unlawful imposition of a tax.
The plaintiff, having been assessed by the defendant
revenue department a use tax of $14,383.94 "on the
price paid for materials and equipment" acquired
by him between January 1, 1955, and December 31,
1957, prays for a decree declaring that such mate-
rials and equipment were acquired and used in "in-
dustrial processing" and so were exempt from use-
and sales-taxation.

The issue as brought to this Court requires appli-
cation to the testimonially established facts of 2

interrelated exemptive provisions of the use tax act and the sales tax act. They appear, abbreviated, in the margin.* The chancellor, after an extended hearing, entered a decree of exemption in favor of plaintiff. The defendant department of revenue appeals.

White Pine Copper Company mines copper ore and manufactures copper ingots for sale in the copper market. Its mining and manufacturing operations are conducted in Ontonagon county, adjacent to the Porcupine Mountain State Park, some 4 to 6 miles inland from the southerly shore of Lake Superior. Great quantities of pure or decanted water are required for the manufacturing process. To supply such need the company has constructed an intake, opposite Silver City in the deeper waters of Lake Superior, from which it pumps water by means of a 36-inch pipe to its inland mill. The latter is located strategically near the headwaters of numerous small streams forming a part of the northerly watershed of the Upper Peninsula. Such streams are coursed substantially parallel. They average, at the point of present interest, but a few hundred yards apart. Each drains almost due north into

---

* *Exemption from use-taxation*

"Sec. 4. The tax hereby levied shall not apply to: * * *

"(g) Property sold to persons for use or consumption in industrial processing: Provided, That the term 'industrial processing' shall not be deemed to include tangible personal property permanently affixed and becoming a structural part of real estate." CLS 1956, § 205.94 (Stat Ann 1960 Rev § 7.555[4]).

*Exemption from sales-taxation*

"Sec. 4a. No person subject to tax under this act need include in the amount of his gross proceeds used for the computation of the tax any sales of tangible personal property: * * *

"(g) To persons for use or consumption in industrial processing: Provided, That the term 'industrial processing' shall not be deemed to include tangible personal property permanently affixed and becoming a structural part of real estate." CLS 1956, § 205.54a (Stat Ann 1960 Rev § 7.525).

(Note—These sections have been amended many times, and during the period involved in this case. The quoted portions, however, have recently remained unchanged, and references are to the most convenient citations.—REPORTER.)

Lake Superior. One carries a name. The others do not.

The company has constructed, across the gullies and valleys of these streams, what is designated in the record as a "tailings dam." It plans like construction, by like means and for the same purpose, as manufacturing operations and lawful disposition of waste products emanating from the company's mill may in the future require. These earthen dams are, when completed, designed to provide vast areas for lawful disposition of "tailings." The dam presently in use is 7,800 feet long. It is 40 feet high, and provides an impound of more than 1 square mile. Another like dam, extending parallel to the one presently in use, is now under construction. It is to be 8,900 feet long.

"Tailings" constitute the final waste product of the company's mining and manufacturing process. Such waste product is liquid or substantially so. It consists of water, mud, crushed rock and noxious chemicals. Since tailings cannot be released into public waters, the company makes disposition thereof as now indicated.

The company's present "tailings dam" is constructed below the level of its mill. The tailings are released from the mill, into the area of impound, called a "tailings pond." The solid and semisolid portions of such tailings sink slowly to the bottom of the pond, leaving at the top clear water, clear enough for use in the industrial process. Such water is known as decantate. It is pumped back into the mill and is steadily utilized, with the fresh water which is continuously supplied from Lake Superior, in the manufacturing process. The mill requires, in the course of normal operations, 11,500 gallons per minute of lake water and decantate. Of this required supply 9,000 gallons per minute come from the lake and 2,500 gallons per minute come from

"decant towers." Such towers are constructed in the pond, of steel and concrete. They are approximately 10 feet square. The decantate flows steadily into them and is sump-pumped back to the mill as indicated above. The company's mill superintendent testified, without dispute, that "as time goes on and we expand and have increased production, the amount of this reclaimed water [decantate] will increase."

Turning now to plaintiff's part in these operations. He has contracted with the company, continuously since 1955, to construct, heighten, enlarge and compact the company's present dam and pond and the company's partly constructed new dam and pond. For such exclusive purpose he as acquired and used, and continues to acquire and use, heavy earth-moving equipment, consisting principally of large bulldozers and earth movers. All this equipment is utilized in fulfillment of plaintiff's said contract. The performance thereof takes place entirely on premises of the company. No part of such equipment has been purchased for use on other jobs; neither has it been used elsewhere.

The defendant would use-tax such equipment. Plaintiff objects either to use- or sales-taxation thereof. This brings us to the presented issue: Whether, on these facts of no dispute, plaintiff has sustained the burden of persuasion that his equipment was acquired for exempted use or consumption in "industrial processing" and has been so used or consumed.

Having considered the unusual nature of this industrial operation and plaintiff's contribution thereto, we find ourselves in complete agreement with the chancellor's decision. The quoted exemptive provisions are written in simple English. The difficulty lawyers and judges experience in the application thereof is due invariably to the dissimilarity of cir-

cumstances under which the State would tax and the taxpayer would exempt, and particularly to law's common ailment, uncertainty about the facts. In this case, fortunately and commendably, the parties have made a certain and comprehensive record of visibly decisive facts. Thus, in the words of Cardozo,* the applicable rule of law has sprouted from the seed and turned its branches toward the light. We proceed, by way of summary.

White Pine cannot manufacture, in Michigan at least, without lawful disposition of tremendous quantities of liquid tailings which, in the manufacturing process, are steadily discharged from its mill. White Pine has found a way to make such disposition and, hand in hand, a way to repeatedly utilize a substantial portion of such tailings in its manufacturing process. The way so found requires unending construction of huge seepage-proof dams and ponds. Such construction in turn requires the acquisition, use and consumption—on White Pine's premises— of heavy earth-moving equipment.

Such equipment at no time is affixed to realty within the quoted provisos of the sales and use tax acts. If there is some other available method of disposition of such tailings that method does not appear in the record. And even if such alternative were available it is for White Pine—not the revenue department—to say which method it will employ to "prepare raw material  *  *  *  for the market" (see definitional adoption in *Bay Bottled Gas Co.* v. *Department of Revenue,* 344 Mich 326, 330). The work accomplished by means of plaintiff's equip-

---

* "More and more, we lawyers are awaking to a perception of the truth that what divides and distracts us in the solution of a legal problem is not so much uncertainty about the law as uncertainty about the facts—the facts which generate the law. Let the facts be known as they are, and the law will sprout from the seed and turn its branches toward the light." Mr. Justice Cardozo, quoted in The Art of Advocacy, by Lloyd Paul Stryker (Simon and Schuster, 1954), p 11.

ment permits a more economical manufacturing operation in that a substantial part of such waste tailings—the decantate—may be used again and again in avoidance of the extra expense of pumping additional quantities of water from the lake and then disposing of additional quantities of tailings by means of more and more compensatorily required dams and ponds. From all this the conclusion cannot be avoided that plaintiff's equipment was acquired for and is being used in the industrial processing of copper ore into copper ingots, "for the market."

The attorney general refers to *Edison* v. *Department of Revenue,* 362 Mich 158; *Bay Bottled Gas Co. v. Department of Revenue, supra; Kress* v. *Department of Revenue,* 322 Mich 590; and *Michigan Allied Dairy Ass'n* v. *State Board of Tax Administration,* 302 Mich 643, and says that plaintiff "performs a service" only for White Pine and therefore is not entitled to exemption as doing a part of White Pine's industrial process. For reasons appearing above, we cannot agree with such contention. If any one of the cited cases has pertinence, it would have to be that of the analogy shown in the *Dairy Association Case.* There it was held that milk cans, used necessarily to cool milk prior to sale, came within the then exemptive "industrial processing" provision of the sales and use tax statutes. Here it is necessary to dispose of tailings as a condition to manufacture of copper for sale.

The attorney general says further that "Since the *R. C. Mahon Case* [*R. C. Mahon Co.* v. *Department of Revenue,* 306 Mich 660], persons such as appellee engaged in the business of altering or constructing real estate for others are not engaged in industrial processing as this term is used in the Michigan sales and use tax statutes." We do not perceive that *Mahon* lays down such rule and look upon it as holding that, where the assessee transfers ownership of

personal property (p 663) "to the party with whom [he] contracts for its final use and consumption," the sales tax exemption does not apply. The present plaintiff has not and does not transfer ownership of his equipment to White Pine. He does use it in the performance of a contract for the doing of an essential part of White Pine's process of manufacture.

Affirmed. No costs.

DETHMERS, C. J., and CARR, KELLY, KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred.

ADAMS, J., took no part in the decision of this case.