MICHIGAN BELL TELEPHONE COMPANY v DEPARTMENT OF
TREASURY

Docket No. 192708. Submitted June 10, 1997, at Lansing. Decided April 10,
1998, at 9:00 A.M. Leave to appeal sought.

Michigan Bell Telephone Company filed a petition with the Michigan
Tax Tribunal challenging certain use tax assessments made by the
Department of Treasury for the tax years 1989 through 1992 and
seeking a refund of certain use taxes already paid for those years.
The petitioner asserted that the respondent erred in reducing the
communication equipment exemption contained in § 4(t) of the
Use Tax Act, MCL 205.94(t); MSA 7.555(4)(t), by the percentage
that the equipment had been used to handle nonexempt calls. The
petitioner also asserted that it should not be required to pay to the
state a customer's use tax where the customer had failed to pay the
bill for both the underlying service and the use tax. The Tax Tribu-
nal held that the respondent could not apportion the use tax
exemption under the circumstances because the petitioner had
used the equipment in question for exempt purposes and that the
exempt use was substantial. The Tax Tribunal also held that the
respondent could not levy a use tax assessment against the peti-
tioner for uncollected customer use tax liability, because the ulti-
mate burden of paying those taxes lies on the petitioner's custom-
ers, not on the petitioner. The respondent appealed.

The Court of Appeals *held*:

1. There is no dispute that the equipment in question would be
subject to the use tax but for any exemption afforded by § 4(t).
Section 4(t) provides that the purchase of this type of equipment is
exempt from the use tax where it is used to render a service that is
taxable under the Use Tax Act. It was stipulated that eighty-five
percent of the calls using the petitioner's equipment were made by
customers that were subject to the use tax, while the remaining fif-
teen percent of the calls were made by customers who were tax-
exempt.

2. There is nothing in the language of § 4(t) to suggest that the
Legislature intended the use tax exemption to be apportioned
between exempt and nonexempt uses where, as here, the pur-
chased telecommunication equipment handles the calls of both tax-

able and nontaxable customers. Elsewhere in the Tax Code, the Legislature has clearly and expressly provided for the apportionment of a tax where such was its intent. Because the Legislature could have provided for the apportionment of the use tax exemption had it intended such a result where purchased telecommunication equipment is used for both exempt and nonexempt uses, but chose not to do so, it would be improper for the judiciary to expand the scope of the Use Tax Act by finding such an apportionment by implication. Accordingly, the Tax Tribunal correctly determined that the petitioner was entitled to an exemption from the use tax for the full amount of its purchase of the communications equipment in question.

3. Although the Use Tax Act in § 7, MCL 205.97; MSA 7.557(7), imposes liability for the payment of the use tax associated with the purchase of a taxable service on the purchaser of such a service, § 5(a) of the act, MCL 205.95(a); MSA 7.555(5)(a), requires each seller to collect the use tax from the consumer, and § 9 of the act, MCL 205.99; MSA 7.555(9), imposes personal liability for the payment of the tax on a seller that "fails to do so." Section 16 of the act, MCL 205.106; MSA 7.555(16), imposes criminal sanctions on a seller who fails, neglects, or refuses to collect the use tax.

4. The seller and purchaser are not jointly liable for the payment of the use tax. Section 7 of the Use Tax Act imposes primary liability for payment of the use tax on the purchaser, and § 9 imposes a secondary liability for the payment of the tax on the seller that arises out of the seller's failure to collect the tax. Although § 9 could be read to create absolute liability for the payment of the use tax on a seller who, despite engaging in genuine efforts to secure payment of the tax from a consumer, is unable to collect the tax, the Tax Tribunal did not err in concluding that, in light of the entire statutory scheme, the Legislature intended that the seller suffer the imposition of the tax obligation or a criminal sanction only upon some showing that the seller's inability to collect the tax from the consumer was fault-based. Because the respondent admitted that the petitioner did everything commercially reasonable to collect the use taxes in question, the Tax Tribunal properly held that the petitioner should not be liable for the payment of those uncollected use taxes.

Affirmed.

1. TAXATION — USE TAXES — COMMUNICATION EQUIPMENT EXEMPTION — APPORTIONMENT.

A communication provider that purchases communication equipment and makes substantial use of the equipment to handle calls by customers who are subject to taxation under the Use Tax Act is enti-

tled to the full amount of the communication equipment exemption provided in the Use Tax Act; the Legislature did not explicitly provide that the communication equipment exemption of the Use Tax Act should be reduced by an apportionment of the use of the purchased equipment by taxable and nontaxable customers, and the judiciary should not expand or contract the scope of the tax exemption by implication (MCL 205.94[t]; MSA 7.555[4][t]).

2. TAXATION — USE TAXES — UNCOLLECTED USE TAXES — SELLER'S LIABILITY.
    A seller of a product or service that is subject to taxation under the Use Tax Act is liable to the state for uncollected use taxes only where its failure to collect the use tax from its customers is the result of the seller's failure to do everything that is commercially reasonable to collect the taxes (MCL 205.99; MSA 7.555[9]).

*Jaffe, Raitt, Heuer & Weiss* (by *Brian G. Shannon* and *Robert E. Lewis*), for the petitioners.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Ross H. Bishop,* Assistant Attorney General, for the respondent.

Before: GRIBBS, P.J., and SAWYER and YOUNG, Jr., JJ.

YOUNG, JR., J. In this tax dispute respondent Department of Treasury appeals as of right from the opinion and judgment of the Michigan Tax Tribunal in favor of petitioner Michigan Bell Telephone Company canceling a Department of Treasury assessment and ordering a refund of use taxes paid by Michigan Bell during tax years 1989 through 1992. We affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

This dispute was submitted to the Tax Tribunal on stipulated facts. Michigan Bell provides telecommunication services that are subject to the Michigan use tax under MCL 205.93a(a); MSA 7.555(3a)(a).[1] Michi-

---

[1] MCL 205.93a(a); MSA 7.555(3a)(a), during the tax years in question, read as follows:

gan Bell purchased telecommunication equipment that it claimed was exempt from sales tax pursuant to MCL 205.54a(k); MSA 7.525(k)[2] and from use tax pursuant to MCL 205.94(t); MSA 7.555(4)(t).[3]

The equipment at issue is exchange equipment and station apparatus through which telephone calls flow. Generally, Michigan Bell's equipment is exempt from both sales and use taxes because Michigan Bell's customers pay either sales or use tax on their calls flowing through Michigan Bell's equipment. However, telephone service provided by coin-operated phones and telephone service provided to schools, hospitals, and certain charitable institutions are not subject to use tax.[4] To put the issue in simple terms, application of the use tax exemption to Michigan Bell's communications equipment depends on whether the underlying service provided is itself taxable.

Michigan Bell paid $4,623,932 in use taxes during tax years 1989 through 1992 on its purchase of telecommunication switching and exchange equipment. Michigan Bell sought a refund of these taxes, con-

---

The use or consumption of the following services shall be taxed under this act in the same manner as tangible personal property is taxed under this act:

(a) Intrastate telephone, telegraph, leased wire and other similar communications, including local telephone exchange and long distance telephone service which both originates and terminates in Michigan, and telegraph, private line and teletypewriter service between places in Michigan, but excluding telephone service by coin-operated installations, switchboards, concentrator-identifiers, interoffice circuitry and their accessories for telephone answering service and directory advertising proceeds.

[2] The applicability of the sales tax exemption is not at issue in this case.

[3] See text, *post* at 206.

[4] See MCL 205.93a(a); MSA 7.555(3a)(a) and MCL 205.94(i); MSA 7.555(4)(i).

tending that the subject equipment should have been fully exempt from the use tax even though some of the calls routed through the equipment were tax-exempt because the customer was considered to be an exempt user (e.g., hospitals, schools, etc.). It was stipulated that eighty-five percent of the calls flowing through Michigan Bell's equipment were made by customers subject to use tax and fifteen percent who were tax-exempt.

The $4,623,932 represents the use tax that the Department of Treasury levied on Michigan Bell's equipment, which amount corresponds to the percentage of calls flowing through the equipment placed by users who did not pay use tax on the calls made. As such, the Department of Treasury did not disallow the entire use tax exemption Michigan Bell sought, but merely apportioned the exemption, applying it only to the portion of the equipment's value attributable to the processing of taxable (nonexempt) calls.

Michigan Bell also challenged a separate Department of Treasury assessment in the amount of $2,751,754. Where applicable, Michigan Bell bills to its nonexempt customers an appropriate amount for the use tax assessed on the calls placed by those customers. When the amount billed is determined to be uncollectable, Michigan Bell reduces by a like amount the use tax it pays on its monthly return to the Department of Treasury. The net effect of this practice is that Michigan Bell avoids payment of the use tax attributable to the taxable services that were not paid by its uncollectable customers. The Department of Treasury disallowed this deduction and made the challenged assessment, contending that Michigan Bell was liable for the entire amount of the use tax levied

on nonexempt calls, notwithstanding Michigan Bell's inability to collect the tax from the consumer. For the purposes of the litigation before the Tax Tribunal, the parties stipulated that Michigan Bell had exercised reasonable business care in attempting to collect the applicable use tax.

The parties submitted two issues for determination by the Tax Tribunal:

> (1) Can the Department of Treasury apportion Michigan Bell's communication equipment exemption?
>
> (2) Can the Department of Treasury require Michigan Bell to pay a customer's use tax when the customer fails to pay for the use tax as well as for the underlying service?

The Tax Tribunal, relying on *Michigan Allied Dairy Ass'n v State Bd of Tax Administration*, 302 Mich 643; 5 NW2d 516 (1942), answered the first question by ruling that the Department of Treasury could not apportion the use tax exemption on Michigan Bell's communication equipment because "the equipment is used from the very outset and constantly thereafter for exempt purposes and the exempt use is substantial."[5] Regarding the second question, the Tax Tribunal disallowed the assessment for uncollected customer use taxes on the ground that the "ultimate burden of paying use tax does not fall on [Michigan Bell]. Rather, the burden falls on [Michigan Bell's] customer."

---

[5] The Tax Tribunal did suggest that apportionment was appropriate in certain cases.

## II. ANALYSIS

### A. APPORTIONMENT

In deciding the apportionment question, the Tax Tribunal was required to construe § 4(t) of the Use Tax Act, 1937 PA 94, MCL 205.91 *et seq.*; MSA 7.555(1) *et seq.* During the tax periods at issue in this appeal, § 4(t), MCL 205.94(t); MSA 7.555(4)(t), read as follows:

> The [use] tax levied does not apply to:
>
> \*     \*     \*
>
> The purchase of machinery and equipment for use or consumption in the rendition of a service, the use or consumption of which is taxable under section 3a(a) [MCL 205.93a(a); MSA 7.555(3a)(a)] except that this exception is limited to the tangible personal property located on the premises of the subscriber and the necessary exchange equipment.

The parties do not cite and our research has not revealed any published decision directly addressing this use tax exemption applicable to equipment used in rendering communication services. Absent fraud, this Court's review of the Tax Tribunal's decision is limited to determining whether the tribunal erred in applying the law or in adopting a wrong legal principle. *Saginaw General Hosp v Saginaw*, 208 Mich App 595, 598; 528 NW2d 805 (1995).[6] We conclude that the Tax Tribunal correctly determined that Michigan Bell was entitled to an exemption from the use tax.

---

[6] We also review the Tax Tribunal's findings of fact and determine whether they are supported by competent, material, and substantial evidence on the whole record. *Saginaw General Hosp, supra.* However, such review is unnecessary in this case because, as stated previously, the Tax Tribunal based its decision on stipulated facts.

The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). Statutory language should be construed reasonably, keeping in mind the purpose of the statute. *Lorencz v Ford Motor Co*, 439 Mich 370, 377; 483 NW2d 844 (1992). The first criterion in determining intent is the specific language of the statute. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. *Barr v Mount Brighton Inc*, 215 Mich App 512, 517; 546 NW2d 273 (1996).

The rule to be applied when construing tax exemptions was well summarized by Justice COOLEY as follows:

> "[I]t is a well-settled principle that, when a specific privilege or exemption is claimed under a statute, charter or act of incorporation, it is to be construed strictly against the property owner and in favor of the public. This principle applies with peculiar force to a claim of exemption from taxation. Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt. In other words, since taxation is the rule, and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms; it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain; and the burden of establishing it is upon him who claims it. Moreover, if an exemption is found to exist, it must not be enlarged by construction, since the reasonable presumption is that the State has

granted in express terms all it intended to grant at all, and that unless the privilege is limited to the very terms of the statute the favor would be extended beyond what was meant." [*Detroit v Detroit Commercial College*, 322 Mich 142, 149; 33 NW2d 737 (1948), quoting 2 Cooley, Taxation (4th ed), § 672, p 1403. ]

There is no dispute that the purchase of the equipment in question, but for any exemption afforded by § 4(t), is subject to use tax. Under § 4(t), the use tax exemption applies if the equipment is deployed to provide a service that is taxable under MCL 205.93a(a); MSA 7.555(3a)(a). The only other conditions of eligibility are that the equipment be necessary exchange equipment or be tangible personal property and located on the premises of the subscriber. MCL 205.94(t); MSA 7.555(4)(t). Again, the applicability of these conditions to the equipment in question is not challenged. On the face of the exemption, it does not appear that the Legislature intended the use tax exemption to be apportioned, such that the exemption applies only to that portion of the equipment's value attributable to the provision of services actually consumed or used that are themselves subject to the use tax.

Our construction of the exemption is bolstered by the fact that when the Legislature has intended to apportion tax on the basis of underlying use, it has clearly and expressly so indicated. By way of example, MCL 205.52(2); MSA 7.522(2) requires, for sales tax purposes, that a retailer keep separate accounts for taxable and nontaxable transactions. Indeed, in *Michigan Allied Dairy, supra*, our Supreme Court was confronted with a similar mixed use and appor-

tionment issue.[7] In declining to apportion the sales and use tax exemptions applicable to industrial processing and agricultural production equipment where that property was subject to mixed use, the Court held:

> Where an article has more than one use, one or more (but not all) of which are within the agricultural producing or industrial processing exemptions, the [L]egislature could have provided that the portion of the value of the article representing its nonexempt use should bear the tax, but it has not done so. We have repeatedly held that the scope of the tax laws may not be extended by implication. [*Id.* at 650.]

Were we to conclude that apportionment is appropriate under MCL 205.94(t); MSA 7.555(4)(t), despite the absence of authorizing language, we would run afoul of our Supreme Court's admonition that we should neither *contract nor expand* the scope of a tax exemption by construing it according to implication. *Michigan Allied Dairy, supra* at 650. A construction permitting apportionment clearly would be contrary to the plain language of the statute.

The Department of Treasury concedes that in *Michigan Allied Dairy, supra,* the Supreme Court held that, despite a partial nonexempt use (delivery) of the equipment in question (milk bottles and cans), the equipment was *totally* exempt from the general sales and use taxes. Nevertheless, the Department of Treasury, citing *Kress v Dep't of Revenue,* 322 Mich 590;

---

[7] In *Michigan Allied Dairy, supra* at 649-650, the machinery at issue involved milk bottles and cans that were used in the pasteurization processing of milk, an exempt use. Following the completion of the pasteurization, the bottles and cans were sealed and used to deliver the milk to consumers, a nonexempt use.

34 NW2d 501 (1948), argues that the concept of apportionment has been recognized by the Supreme Court. In *Kress*, the plaintiff sought a use tax exemption under the industrial processing exemption, which exempted from the use tax "[p]roperty sold to a buyer for consumption or use in industrial processing or agricultural producing." MCL 205.94(g); MSA 7.555(4)(g).[8]

The plaintiff in *Kress* rented water softener units to its customers for both residential use and industrial/commercial use. The Supreme Court held that, under § 4(g), only those units distributed to industrial/commercial users were eligible for a use tax exemption. Although the Supreme Court referenced a specific percentage of units that were eligible for the exemption, we do not read *Kress* as authorizing an "apportionment." Rather, *Kress* merely recognized that only some portion of the total number of units were subject to exempt use.

The most salient and distinguishing fact of *Kress* is that the water softeners at issue were individual units, never subject to a unified industrial process. Rather, they were distributed independently into two user channels, one exempt and one nonexempt. The central importance of the character of the equipment and its distribution to the manner in which the Supreme Court resolved the use tax question in *Kress* was made clear when on remand the Supreme Court reconsidered the case the following year. *Kress v Dep't of Revenue*, 326 Mich 15; 39 NW2d 235 (1949) (*Kress II*). Rather than repudiate *Michigan Allied Dairy*, *Kress II* focused on the different character of

---

[8] This was the same tax provision at issue in *Michigan Allied Dairy*.

the means by which the equipment was utilized in that case: "We think the *Dairy Case* distinguishable in that there each of the units involved was from the very outset and constantly thereafter used in industrial processing as well as otherwise." *Id.* at 18. It was on that basis that the Court in *Kress II* rejected the plaintiff's argument that, like the plaintiff in *Michigan Allied Dairy*, it was entitled to a full exemption because all the water softener units were recycled and eventually put to exempt commercial use.[9]

In sum, we find no basis in the holdings of *Kress* or *Kress II* for concluding that, in the absence of explicit authorizing statutory language, apportionment is appropriate under § 4(t) when the equipment

---

[9] The Department of Treasury points out that the *Kress* Court considered a concurrent House resolution purporting to construe the general Sales Tax Act, enacted earlier, to exclude from sales tax the "sale of anything used *exclusively* in the manufacturing, assembling, producing, preparing, or wrapping, crating, and/or otherwise preparing for delivery any tangible personal property to be sold." *Kress, supra* at 593, quoting House Concurrent Resolution No. 98, July 18, 1933 (emphasis added). Noting that the Sales Tax Act, MCL 205.51 *et seq.*; MSA 7.521 *et seq.*, and the Use Tax Act had a "peculiar intercorrelation," the Court stated: "We may consider that in passing the use tax act, the [L]egislature had in mind the same matters contained in the above quoted concurrent resolution." *Kress, supra* at 593.

In adopting the so-called intent expressed in the resolution, the *Kress* Court cited *Boyer-Campbell Co v Fry*, 271 Mich 282; 260 NW 165 (1935), which in turn noted that "Legislative resolutions are not law, although they are entitled to respectful consideration." *Boyer-Campbell, supra* at 296. Whatever the validity of this proposition in 1935 or 1948, our Supreme Court has since made clear that post hoc legislative pronouncements carry no weight when construing statutes. See *Presque Isle Twp School Dist No 8 Bd of Ed v Presque Isle Co Bd of Ed*, 364 Mich 605, 612; 111 NW2d 853 (1961) (" '[A] legislative body is not permitted under any circumstances to declare what its intention was on a former occasion so as to affect past transactions.' " Quoting *North Trust Co v Snyder*, 113 Wis 516, 530; 89 NW 460 [1902]). Therefore, even assuming that the *Kress* Court attempted to engage in true "apportionment," we have strong reason to question the extent to which the particular analysis in *Kress* should be extended beyond the unique facts it addressed.

involved is put to mixed use, but in a unified process.[10] Therefore, we conclude that Michigan Bell is entitled to a full use tax exemption with respect to its purchase of the communications equipment in question.[11]

### B. MICHIGAN BELL'S LIABILITY FOR UNCOLLECTED CUSTOMER USE TAXES

The second issue decided by the Tax Tribunal was whether Michigan Bell may be held liable for the uncollected (and apparently uncollectable) use taxes that are owed by its customers but who failed to pay them. We conclude that the Tax Tribunal did not err in finding that Michigan Bell could not be required to

---

[10] Perhaps in partial recognition that the *Kress* cases provide no legal support for its apportionment argument, the Department of Treasury has sought to bring this case within the actual holding of those cases. It suggests that Michigan Bell has engaged in two separate undertakings akin to that recognized in the *Kress* cases: "[t]he providing of a service which is taxable, and the providing of a service which is exempt." We disagree with this characterization. As in the case of the milk cans and bottles in *Michigan Allied Dairy*, the communications equipment in this case involves one set of equipment, employed in a *unified process*, serving mixed exempt and nonexempt uses. See also *Minnaert v Dep't of Revenue*, 366 Mich 117, 123; 113 NW2d 868 (1962). There is no basis in this stipulated record to conclude that Michigan Bell, in using its equipment to provide telephone service to the public, can segregate or otherwise direct exempt and nonexempt use by its customers at the point telephone service is rendered or consumed.

[11] The Department of Treasury briefly argues in the alternative that if apportionment under § 4(t) is not permitted, then Michigan Bell is not entitled to *any* tax exemption on the purchase of its communications equipment because that equipment is not used *exclusively* for rendering services that are subject to the use tax. We reject the Department of Treasury's argument for two reasons. First, it is not supported by a plain reading of § 4(t). Second, such an argument is clearly contrary to the Supreme Court's decision in *Michigan Allied Dairy*. Because the exempt use in this case is so substantial, we do not reach or address the issue whether § 4(t) can be applied at all in cases where the exempt use of qualifying equipment is insubstantial or de minimis. We merely hold that apportionment is not expressly authorized by § 4(t).

pay its customers' use taxes where Michigan Bell had used reasonable business care in trying to collect them.

In order to resolve this issue, we must examine various interrelated provisions of the Use Tax Act. Section 7, MCL 205.97; MSA 7.555(7), of the core taxing provision of the act, states:

> Each consumer storing, using or otherwise consuming in this state tangible personal property or services purchased for or subsequently converted to such purpose or purposes shall be liable for the tax imposed by this act, and such liability shall not be extinguished until the tax has been paid to the department. The payment to the department of the tax, interest and any penalty assessed by the department shall relieve the seller, who sold the property or services with regard to the storing, use or other consumption on which the tax was paid from the payment of the amount of the tax which he may be required under this act to collect from the purchaser.

However, § 5(a) of the act, MCL 205.95(a); MSA 7.555(5)(a), requires each seller to collect the "tax imposed by this act from the consumer," and, in addition, § 9, MCL 205.99; MSA 7.555(9), imposes certain tax liabilities for the seller's failure to do so:

> In case any seller who is required or authorized to collect the tax fails to do so, he shall be liable personally for such amount as he failed to collect together with penalty and interest thereon. In such case, the department shall have power to make an assessment against such seller, based upon any information in, or which shall come into its possession.

Finally, § 16 of the Use Tax Act, MCL 205.106; MSA 7.555(16), provides for criminal sanctions for failure

to comply either with the collection requirements or with any other provisions of the act:

> Any seller who fails, neglects or refuses to collect the tax as required by this act, or fails, neglects or refuses to comply with the provisions of this act, or excepting as expressly authorized pursuant to this act, refunds, remits or rebates to a consumer, either directly or indirectly and by whatsoever means, all or any part of the tax levied by this act, or makes in any form of advertising, verbal or otherwise, any statements which might imply he is absorbing the tax or paying the tax for the consumer by an adjustment of prices or at a price including the tax, or in any other manner whatsoever, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than $100.00 nor more than $500.00, and upon conviction for a second or subsequent offense shall be fined not less than $500.00 nor more than $5,000.00, or imprisoned in the county jail not more than 1 year, or by both such fine and imprisonment in the discretion of the court.

The question that this case presents is whether, under the Use Tax Act, the seller's collection duties become transformed into primary responsibility for taxes imposed on the use or consumption of tangible personal property that remain unpaid by the consumer. Stated otherwise, this second issue requires us to determine exactly how extensive is the collection liability of the seller under the act.

The Department of Treasury interprets § 9 of the act as permitting it to assess the use tax against the seller if the consumer does not pay the tax. It notes that the language of § 9 does not relieve the seller of responsibility for collecting the use tax from consumers once the seller has exercised "reasonable business care" in attempting to do so. Instead, the Department of Treasury argues, the statute provides that if the

seller fails to collect the tax, the seller is personally liable for the amount that remains uncollected, plus penalty and interest. The Department of Treasury thus interprets the Use Tax Act to mean that a seller must achieve a one-hundred percent success rate in its collection efforts or become its customers' use-tax payment guarantor.

Contrary to the Department of Treasury's argument, however, § 7 suggests that there is no joint tax liability. Rather, § 7 specifically provides that the appropriate use taxpayer is the consumer. Indeed, the Supreme Court in *Lockwood v Comm'r of Revenue*, 357 Mich 517, 527; 98 NW2d 753 (1959), recognized that, although the seller is required to collect the use tax on behalf of the state, the ultimate burden of paying the tax is on the consumer or purchaser, which is the party exercising the privilege of use, storage, or consumption. We believe that this is an important concept, because it represents one of the primary distinctions between the use tax and the sales tax, the legal incidence of which falls upon the seller only in the case of the sales tax. MCL 205.52; MSA 7.522. As the Court in *Lockwood, supra* at 527, explained:

> As a practical proposition [the use tax and the sales tax] are assessed on different privileges, and the legal incidence of the tax falls in one case on the retailer and in the other on the user, storer or consumer. The fact that the seller of the goods designed for use, storage or consumption in Michigan is required by the statute to collect on behalf of the State the amount due from the purchaser does not alter the situation. The use tax is not imposed on such seller, but, rather, on the party exercising the privilege of use, storage, or consumption, as the case may be. One may be charged with the duty of collecting a tax on behalf of gov-

ernment although the ultimate burden of such tax does not rest on him.

To say the least, the statutory provisions at issue appear to conflict such that a literal reading of each could lead reasonable minds to differ regarding their meaning in relation to one another. This being the case, it was appropriate for the Tax Tribunal to engage in construction of the statute. *Yaldo v North Pointe Ins Co*, 217 Mich App 617, 620-621; 552 NW2d 657 (1996). It is a well-accepted rule of statutory construction that the terms of statutory provisions having a common purpose should be read in pari materia. *Jennings v Southwood*, 446 Mich 125, 136; 521 NW2d 230 (1994). The object of the rule requiring the reading of such provisions in pari materia is to give effect to the legislative purpose as found in statutes on a particular subject. *Id.* at 137. Conflicting provisions of a statute must be read together to produce an harmonious whole and to reconcile any inconsistencies wherever possible. *Gross v General Motors Corp*, 448 Mich 147, 164; 528 NW2d 707 (1995); *Weems v Chrysler Corp*, 448 Mich 679, 699-700; 533 NW2d 287 (1995).

We believe that the Tax Tribunal properly construed the Use Tax Act as requiring an element of intent, or fault, on the part of the seller in its effort to collect the use tax from its customers before it can be subject to either tax liability under § 9 or criminal penalties under § 16. Unquestionably, § 16 requires some conduct on the part of the seller amounting to more than a mere lack of success in collecting use taxes from its consumers. Rather, § 16 imposes criminal penalties only on a seller who "*fails, neglects or refuses* to collect the tax as required by this act."

(Emphasis added). Although "fails" can be read with or without connoting fault, its conjunction with the terms "neglect" and "refuses" makes clear that the Legislature intended to require fault as a basis for criminal liability.

We acknowledge that § 9, which imposes tax liability on a seller that is required to collect the use tax but "fails to do so," can be read as imposing absolute liability on a seller for its mere inability to collect the use taxes owed by its customers. However, we believe that, in light of § 16, and, most important, the fact that § 7 imposes the actual tax obligation only on the consumer, the legislative scheme of these several provisions suggests that the Legislature intended the seller to suffer the imposition of the tax obligation or criminal penalties only upon some showing that the seller's inability to collect the tax was fault-based. Finally, our interpretation is supported by the familiar principle that ambiguities in a taxing statute are to be resolved in favor of the taxpayer. *Michigan Bell Telephone Co v Dep't of Treasury*, 445 Mich 470, 477; 518 NW2d 808 (1994).

In this case, the Department of Treasury has admitted that Michigan Bell did everything commercially reasonable to try to collect the use tax in question on behalf of the state. Given our construction of the act, the record fails to support any basis for imposing tax liability on Michigan Bell simply because it was unsuccessful in its effort to collect the tax from its customers. Therefore, we find no error in the Tax Tribunal's resolution of this issue.[12]

Affirmed.

---

[12] In light of our resolution of this issue, we need not address Michigan Bell's Commerce Clause and Equal Protection Clause arguments.