BETTEN AUTO CENTER, INC v DEPARTMENT OF TREASURY
BETTEN MOTOR SALES, INC v DEPARTMENT OF TREASURY
BETTEN-FRIENDLY MOTORS v DEPARTMENT OF TREASURY

Docket Nos. 265976, 265977, 265978. Submitted May 3, 2006, at Lansing.
    Decided August 1, 2006, at 9:05 a.m. Leave pending, 477 Mich 997.

    Betten Auto Center, Inc.; Betten Motor Sales, Inc.; and Betten-Friendly
    Motors, all licensed automobile dealerships, brought separate actions
    in the Court of Claims against the Department of Treasury. The
    plaintiffs sought declaratory judgments that they were not liable to
    pay a use tax for new and used vehicles that the plaintiffs purchased
    for resale, allowed their employees to use as demonstrators pursuant
    to signed agreements, and ultimately resold. The plaintiffs also
    sought a refund of use tax already paid in connection with such
    vehicles. The court, William E. Collette, J., consolidated the actions
    and granted the plaintiffs summary disposition. The defendant
    appealed, and the Court of Appeals consolidated the appeals.

        The Court of Appeals *held*:

        1. The vehicles used by the plaintiffs' employees before March
    27, 2002, are exempt from the use tax under the resale exemption
    of MCL 205.94(1)(c).

        2. The limited use of the vehicles by the plaintiffs' employees
    did not transform the plaintiffs or their employees into consumers
    of the vehicles under MCL 205.97, and the vehicles are not subject
    to a use tax by virtue of that section.

        3. Regardless of the exemption from the 6-percent use tax under
    the resale exemption, the 2.5-percent use tax and the $30 monthly
    charge provided in MCL 205.93(2) apply to vehicles that the plaintiffs
    allowed their employees to use on or after March 27, 2002, the
    effective date of the amendment of that section by 2002 PA 110.
    Reconciling the conflicting provisions of the amendment to produce a
    harmonious whole indicates that the Legislature intended for this
    lower-rate use tax to apply to the use of demonstrator vehicles
    exceeding the maximum use allowed for those purposes under the
    demonstration exception of MCL 205.94(1)(c), notwithstanding the
    resale exemption also provided by that section.

        Affirmed in part, reversed in part, and remanded.

TAXATION — USE TAX — AUTOMOBILES — RESALE AND DEMONSTRATION USE TAX EXEMPTIONS.

A vehicle purchased by a licensed automobile dealership for resale and used before March 27, 2002, by a dealership employee as a demonstrator vehicle before resale is exempt from the use tax; the 2.5-percent use tax and the $30 monthly charge provided by the Use Tax Act, however, apply to such a vehicle used in that manner by a dealership employee on or after March 27, 2002 (MCL 205.93[2], 205.94[1][c]).

*Fraser Trebilcock Davis & Dunlap, P.C.* (by *Edward J. Castellani, Michael H. Perry,* and *Graham K. Crabtree*), for the plaintiffs.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, *Heidi L. Johnson-Mehney,* Assistant Attorney General, for the defendant.

Before: BORRELLO, P.J., and SAAD and WILDER, JJ.

PER CURIAM. In this tax dispute, defendant appeals as of right an order granting summary disposition in favor of plaintiffs pursuant to MCR 2.116(C)(10). The issue is whether vehicles purchased by plaintiffs for resale and used by plaintiffs' employees before the vehicles were resold were subject to a use tax imposed by the Use Tax Act, MCL 205.91 *et seq.,* or whether the vehicles fell within the resale exemption to use taxation under MCL 205.94(1)(c). We affirm in part, reverse in part, and remand.

From October 1999 to September 2003, plaintiffs, all licensed automobile dealerships selling both new and used automobiles, paid defendant a total of $48,449.74 in use taxes on vehicles that plaintiffs purchased for resale, allowed their employees to use, and ultimately resold.[1] In

---

[1] It is undisputed that all the vehicles in question were ultimately resold.

order to use these vehicles, the employees were required to sign a document called a "Demonstrator Agreement." By signing the demonstrator agreement, the employee agreed to make the demonstrator vehicle available for demonstration during normal business hours, to store the vehicle in an area of high visibility to help advertise the vehicle, to keep the vehicle clean and ready to show at all times, and to pay $25 a week to cover insurance costs. The employee also agreed not to use the vehicle for personal use (unless approved in advance by the dealership), not to permit any family member to drive the vehicle, not to store personal possessions in the vehicle, not to smoke in the vehicle, not to use the vehicle for vacation trips, and not to drive the vehicle outside the normal selling area of the dealership. Management for plaintiffs monitored the mileages of the demonstrator vehicles and kept the use of each vehicle below approximately 5,000 or 6,000 miles. Furthermore, each demonstrator vehicle had a "sticker" in the window listing the vehicle's features and pricing, and all such vehicles were subject to sale at any time.

After an unpublished opinion of this Court held that vehicles purchased for resale, used, and ultimately resold were not subject to a use tax, *Crown Motors of Charlevoix, Ltd v Dep't of Treasury*, unpublished opinion per curiam of the Court of Appeals, issued November 4, 2003 (Docket No. 240555), each plaintiff filed a refund request with defendant. Defendant denied plaintiffs' requests for a refund, stating that *Crown Motors* was not binding because it was an unpublished opinion and asserting that it had "not altered its long-standing position that use tax is properly due on inventory this [sic] is used in a manner other than for demonstration purposes." In addition, defendant asserted that the Legislature's 2002 amendment of MCL 205.93(2) estab-

lished "a formula to determine the tax basis of vehicles held by a dealership for ultimate resale but used for purposes other than demonstration."

After defendant denied their requests for a refund, plaintiffs filed separate complaints in the Court of Claims seeking declaratory judgments that plaintiffs were not liable to pay a use tax for new and used vehicles that plaintiffs purchased as inventory for resale and that were ultimately resold, as well as a refund of use tax already paid, plus costs, attorney fees, and interest. Plaintiffs moved for summary disposition under MCR 2.116(C)(10), arguing that the vehicles in question were exempt from the use tax under the resale exemption, MCL 205.94(1)(c), because they were purchased and held in inventory for resale and were ultimately resold. Plaintiffs disputed defendant's assertion that plaintiffs' employees' use of the vehicles converted the vehicles from exempt to taxable status under MCL 205.97. Defendant argued that plaintiffs were liable to pay the use tax on the vehicles because although plaintiffs originally purchased the vehicles for resale, and the vehicles were therefore originally exempt from the use tax under the resale exemption of MCL 205.94(1)(c), plaintiffs' employees' use of the vehicles converted the vehicles from exempt to nonexempt. Defendant further argued that the Legislature's 2002 amendment to MCL 205.93(2) also demonstrated the Legislature's recognition that a vehicle purchased for resale may be used for a nonexempt purpose before being resold and that the lower 2.5-percent use tax imposed under MCL 205.93(2) should apply to plaintiffs' vehicles. The trial court noted that even though it was not bound by *Crown Motors*, it found *Crown Motors* persuasive. Furthermore, the trial court ruled that plaintiffs' vehicles qualified under the resale exemption contained in MCL 205.94(1)(c) and rejected defendant's

conversion argument. The trial court therefore ordered defendant to refund plaintiffs $48,449.74 in use taxes already paid.

We review de novo a trial court's grant or denial of summary disposition under MCR 2.116(C)(10). *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion brought under MCR 2.116(C)(10) tests the factual support for a claim. *Downey v Charlevoix Co Bd of Co Rd Comm'rs*, 227 Mich App 621, 625; 576 NW2d 712 (1998). The pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties must be considered by the court when ruling on a motion brought under MCR 2.116(C)(10). MCR 2.116(G)(5); *Downey, supra* at 626. When reviewing a decision on a motion for summary disposition under MCR 2.116(C)(10), this Court "must consider the documentary evidence presented to the trial court 'in the light most favorable to the nonmoving party.' " *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 538-539; 620 NW2d 836 (2001), quoting *Harts v Farmers Ins Exch*, 461 Mich 1, 5; 597 NW2d 47 (1999). A trial court has properly granted a motion for summary disposition under MCR 2.116(C)(10) "if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

Michigan has enacted the Use Tax Act, MCL 205.91 *et seq*. The use tax "complements the sales tax and is designed to cover those transactions not covered by Michigan's General Sales Tax Act." *WPGP1, Inc v Dep't of Treasury*, 240 Mich App 414, 416; 612 NW2d 432 (2000). Under the Use Tax Act, a use tax is imposed "for the privilege of using, storing, or consuming tangible

personal property in this state at a rate equal to 6% of the price of the property or services specified . . . ." MCL 205.93(1). The Use Tax Act places the ultimate liability on the consumer. MCL 205.97; *World Book, Inc v Dep't of Treasury*, 459 Mich 403, 408, 415-416; 590 NW2d 293 (1999). The term "use" is defined broadly to include "the exercise of a right or power over tangible personal property incident to the ownership of that property including transfer of the property in a transaction where possession is given." MCL 205.92(b). Under MCL 205.94(1)(c), however, "[p]roperty purchased for resale" and property purchased for "demonstration purposes" are exempt from the use tax. The exemptions in MCL 205.94(1)(c) specifically provide:

> (1) The following are exempt from the tax levied under this act, subject to subsection (2):
>
> * * *
>
> (c) Property purchased for resale, demonstration purposes, or lending or leasing to a public or parochial school offering a course in automobile driving . . . . For a dealer selling a new car or truck, exemption for demonstration purposes shall be determined by the number of new cars and trucks sold during the current calendar year or the immediately preceding year without regard to specific make or style according to the following schedule of 0 to 25, 2 units; 26 to 100, 7 units; 101 to 500, 20 units; 501 or more, 25 units; but not to exceed 25 cars and trucks in 1 calendar year for demonstration purposes. . . .

"*[T]ax exemptions* are strictly construed against the taxpayer and in favor of the taxing authority." *Nomads, Inc v Romulus*, 154 Mich App 46, 55; 397 NW2d 210 (1986) (emphasis in original). "Since taxation is the rule and exemption the exception, the intention to make an exemption must be expressed in clear and unambiguous terms." *Id.* Because tax exemptions are disfavored, the

taxpayer has the burden of proving entitlement to a tax exemption. *Elias Bros Restaurants, Inc v Treasury Dep't*, 452 Mich 144, 150; 549 NW2d 837 (1996).

The trial court ruled that plaintiffs' vehicles were exempt from use taxation under the resale exemption contained in MCL 205.94(1)(c). Defendant concedes that plaintiffs are entitled to a demonstration exemption for 25 vehicles on the basis of the number of vehicles plaintiffs sell each year.[2] However, defendant argues that any vehicles beyond the 25 allowed under the demonstration exemption were not exempt under the resale exemption because plaintiffs' employees' use of the otherwise use-tax-exempt vehicles resulted in the conversion of the vehicles under MCL 205.97 and the vehicles were therefore subject to a use tax. Therefore, the relevant inquiry in this case is twofold: first, whether the vehicles in question are exempt from imposition of the use tax under the resale exemption and, second, whether plaintiffs' conduct of permitting their employees to use the vehicles as permitted under the demonstrator agreements resulted in the conversion of the vehicles under MCL 205.97 and therefore subjected them to a use tax?

We hold that the vehicles in question are exempt from the imposition of a use tax under the resale exemption contained in MCL 205.94(1)(c). The Michigan Supreme Court has recognized that "[i]n MCL 205.94(c); MSA 7.555(4)(c), the Legislature provided in clear and unambiguous language an exemption for property purchased for resale." *People v Rodriguez*, 463

---

[2] The parties did not raise the issue of the demonstration exemption below, and the trial court did not rule on this issue. Nevertheless, both parties agree that if the resale exemption is inapplicable, at a minimum, plaintiffs are entitled to a demonstration exemption for 25 vehicles, given the number of vehicles sold by plaintiffs.

Mich 466, 471; 620 NW2d 13 (2000). In this case, plaintiffs assert that they purchased the vehicles in question as inventory for resale, and, in defendant's brief on appeal, defendant asserts that plaintiffs purchased the vehicles as "inventory." We therefore conclude that the vehicles in question were purchased for resale. Furthermore, it is undisputed that all the vehicles were, in fact, resold. Therefore, the resale exemption applies to all the vehicles in question. *Id.*

The answer to the second inquiry requires more analysis. The conversion statute provides, in relevant part: "Each consumer storing, using or otherwise consuming in this state tangible personal property or services purchased for or subsequently converted to such purpose or purposes shall be liable for the tax imposed by this act . . . ." MCL 205.97. We previously rejected defendant's conversion argument in the unpublished opinion in *Crown Motors.* In that case, we stated:

> Moreover, defendant's purported authorities for its "conversion" argument are unavailing. Defendant first cites MCL 205.97, which states, in part, that "[e]ach consumer storing, using or otherwise consuming in this state tangible personal property or services purchased for or subsequently converted to such purpose or purposes shall be liable for the tax imposed by this act . . . ." The primary effect of this section is to establish that the economic burden of the use tax falls on the consumer of the property, *Michigan Bell Telephone Co v Dep't of Treasury,* 229 Mich App 200, 215; 581 NW2d 770 (1998), and it is part of a legislative scheme imposing tax liability on the seller only if the seller is at fault for failing to collect it. *Id.* at 217. The statute provides no guidance concerning *how* or *when* property can be "converted" from one purpose to another. [*Crown Motors, supra,* slip op at 3.]

Given our holding in *Crown Motors,* and for other reasons, we are not persuaded by defendant's conver-

sion argument. Defendant argues that virtually any use, beyond a prospective purchaser test-driving a vehicle or an employee filling the vehicle with gasoline, would constitute a conversion under MCL 205.97 subjecting the vehicle to the use tax. However, MCL 205.97 imposes liability for the use tax only on a "consumer." We hold that plaintiffs' employees' limited use of the vehicles did not transform plaintiffs or their employees into "consumers" of the vehicles under MCL 205.97. The term "consumer" is not defined in MCL 205.97. If a statute does not define one of its terms, we may consult a dictionary, such as Black's Law Dictionary, for guidance. *Consumers Power Co v Dep't of Treasury*, 235 Mich App 380, 385; 597 NW2d 274 (1999). On the basis of the definition of "consumer" in Black's Law Dictionary, we conclude that plaintiffs, by definition, were not "consumers" and that MCL 205.97 therefore does not apply to them. Black's Law Dictionary (8th ed) defines "consumer" as "[a] person who buys goods or services for personal, family, or household use, with no intention of resale; a natural person who uses products or personal rather than business purposes." It is undisputed that plaintiffs purchased the vehicles for resale purposes, and not for personal, family, or household use. Furthermore, plaintiffs only permitted their employees to use the vehicles as demonstrators for business reasons. In the demonstrator agreements signed by the employees, the employees specifically agreed not to use the vehicles for personal reasons. Therefore, we conclude that plaintiffs, as the sellers of the vehicles, by definition were not the consumers. Our Supreme Court has stated that because the consumer exercises "the privilege of use, storage, or consumption" of a good, "the appropriate party to pay a use tax is the consumer, not the seller." *World Book, Inc, supra* at 415-416.

In sum, we affirm the trial court's holding that plaintiffs' vehicles that were purchased for resale and used by plaintiffs' employees before March 27, 2002, were exempt from a use tax under the resale exemption contained in MCL 205.94(1)(c). Furthermore, we affirm the trial court's rejection of defendant's conversion argument. Nevertheless, we conclude that plaintiffs were not completely exempt from any use tax on vehicles used by plaintiffs' employees on or after March 27, 2002, the effective date of the amendment to MCL 205.93(2). In its brief opposing plaintiff's motion for summary disposition, defendant raised the issue of the effect of the 2002 amendment to MCL 205.93(2). However, the trial court did not address it. Nevertheless, we may address an issue that is not preserved for appellate consideration because it was not addressed by the trial court if it is an issue of law and the facts necessary for resolution of the issue are presented. *Miller v Inglis*, 223 Mich App 159, 168; 567 NW2d 253 (1997). We therefore will address this issue.

In 2002, the Legislature amended MCL 205.93(2).[3] The amendment provided that "[t]he price tax base of a new or previously owned car or truck held for resale by a dealer and that is not exempt under section 4(1)(c) is the purchase price of the car or truck multiplied by 2.5% plus $30.00 per month beginning with the month that the dealer uses the car or truck in a nonexempt manner." MCL 205.93(2). The issue is whether this 2.5-percent use tax and the $30 monthly charge apply to plaintiffs' vehicles even though plaintiffs' vehicles were exempt from use taxation under the resale exemption. We conclude that the 2.5-percent use tax and the $30 monthly charge apply to vehicles that plaintiffs allowed

[3] 2002 PA 110.

their employees to use on or after March 27, 2002, notwithstanding the resale exemption.

The amendment states that the 2.5-percent use tax applies to new or used vehicles that are "held for resale" and that are "not exempt under section 4(1)(c)." MCL 205.93(2). We observe that the statute contains an inherent inconsistency because the exemption under MCL 205.94(1)(c) includes a resale exemption. In this case, it is not disputed that plaintiffs' vehicles were "held for resale." MCL 205.93(2). The question, therefore, is whether the Legislature intended the language "not exempt under section 4(1)(c)" to include vehicles exempt under the resale exemption. Although MCL 205.94(1)(c) includes both the resale exemption and the demonstration exemption, we conclude that the language "not exempt under section 4(1)(c)" refers to the demonstration exemption alone. The Legislature could not have intended the language to include the resale exemption because virtually every vehicle "held for resale by a dealer" would necessarily have been purchased for resale and therefore would have been exempt from use taxation under the resale exemption in MCL 205.94(1)(c). Therefore, construing the amendment as being inapplicable to vehicles purchased for resale would, in effect, nullify the amendment. When construing a statute, we must avoid any construction that would render any part of the statute surplusage or nugatory. *People v Borchard-Ruhland*, 460 Mich 278, 285; 597 NW2d 1 (1999). In addition, we must read conflicting provisions of a statute together to produce a harmonious whole and to reconcile any inconsistencies whenever possible. *Michigan Bell Tel Co v Dep't of Treasury*, 229 Mich App 200, 216; 581 NW2d 770 (1998). MCL 205.93(2) admittedly contains conflicting provisions because it applies to vehicles "held for resale by a dealer" that are "not exempt under section

4(1)(c)," and virtually all vehicles "held for resale by a dealer" are exempt under the resale exemption contained in MCL 205.94(1)(c). Reading MCL 205.93(2) as applying even if vehicles are exempt under the resale exemption reconciles the inconsistencies in the amendment and produces a harmonious whole. Furthermore, a legislative analysis[4] of this amendment also supports this conclusion. According to the analysis, the purpose of the amendment is to tax "any vehicles used for demonstration purposes that are in excess of a dealer's maximum allowable number of tax-exempt demonstration vehicles" at the lower 2.5-percent use tax rate, plus $30 for each month the vehicle is used. Senate Legislative Analysis, SB 678, December 19, 2002. Therefore, we hold that the Legislature intended for this lower-rate use tax to apply to the use of demonstration vehicles exceeding the maximum allowable under the demonstration exception notwithstanding the resale exemption. This amendment codifies the practice that vehicles purchased by an automobile dealer for resale may be used to a limited extent by a dealer or a dealer's employee to promote the dealer's business and the various models of vehicles. However, despite the fact that the dealer is not the ultimate consumer, under the statutory scheme adopted by our Legislature in MCL 205.93(1) some use taxation is appropriate. Imposing the lower 2.5-percent use tax, rather than the full 6-percent use tax, appears to reflect the recognition of the Legislature that in some instances, imposition of an

---

[4] We are mindful that a legislative analysis is a feeble indicator of legislative intent and is generally unpersuasive as a tool of statutory construction. *Morales v Parole Bd*, 260 Mich App 29, 43; 676 NW2d 221 (2003). However, we observe that our conclusions regarding MCL 205.93(2) are not based on this legislative analysis alone. We include the analysis merely because it provides additional support for our conclusion regarding MCL 205.93(2) based on the rules of statutory construction.

intermediate rate of use taxation strikes a better balance than an all-or-nothing approach to use taxation.

In sum, we affirm the trial court's holding that those vehicles used by plaintiffs' employees before March 27, 2002, were exempt from a use tax under the resale exemption. However, for any vehicles beyond the 25 allowable exemptions under the demonstration exemption that were used by plaintiffs' employees on or after March 27, 2002, we hold that those vehicles would be subject to the 2.5-percent use tax and $30 monthly charge under MCL 205.93(2). We therefore remand this matter to the trial court. On remand, the trial court shall order defendant to refund to plaintiffs the portion of use tax paid for the time before March 27, 2002. For the time after March 26, 2002, the trial court shall direct plaintiffs to submit to the court documentation sufficient to enable the court to determine specifically which vehicles were used in a nonexempt manner and in what months. The trial court shall then order defendant to refund the amount of use tax plaintiffs paid for the period after March 26, 2002, less the 2.5-percent for use tax and the $30 monthly charge imposed under MCL 205.93(2).

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

WILDER, J. I concur in the result only.